IN THE MATTER OF JAMES ALEXANDER, as Guardian Ad Litem for SAMANTHA ALEXANDER, Petitioner v. CUMBERLAND COUNTY BOARD OF EDUCATION, Respondent

No. COA04-1497

(Filed 19 July 2005)

**1. Schools and Education— two-day suspension—subject matter jurisdiction**

The trial court lacked subject matter jurisdiction to consider the propriety of an initial two-day school suspension imposed under N.C.G.S. § 115C-391(b).

**2. Schools and Education— suspension—due process— hearings—contact between principal and associate superintendent**

A high school student's due process rights were not violated in the issuance of a suspension where the student and her parents had hearings in school, before an administrative hearing officer, before the associate superintendent, before the board of education, and in the courts. They were represented by counsel and had the opportunity to present evidence, cross-examine witnesses, and make arguments. Moreover, there was no due process violation in an associate superintendent discussing the case with the principal before the initial school hearing.

**3. Schools and Education— disruptive behavior—pulling down gym shorts—substantial evidence**

There was substantial evidence to support a school board's decision that "shanking" a fellow student, or pulling down her P.E. shorts, including her underwear, constituted disruptive behavior, disorderly conduct, and hazing.

**4. Schools and Education— suspension—not arbitrary or capricious—no equal protection violation**

A school board's decision to suspend a high school student for 15 days for "shanking" a fellow student by pulling down her P.E. shorts was not arbitrary or capricious even though male football players did not receive similar punishment for the practice.

Appeal by petitioner from an order entered 3 September 2004 by Judge John R. Jolly, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 11 May 2005.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for petitioner-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Mark A. Davis; David H. Phillips for respondent-appellee.*

HUNTER, Judge.

James Alexander, the guardian ad litem for Samantha Alexander ("Samantha"), presents the following issues for our consideration: Did the trial court erroneously affirm the Cumberland County Board of Education's ("Board") decision to uphold Samantha's school suspension because (I) Samantha's due process rights were violated, (II) substantial evidence did not support the school board's decision, and (III) the school board's actions were arbitrary and capricious. After careful review, we affirm the order below.

The evidence tends to show that Samantha was a ninth grade student at Cape Fear High School on 6 October 2003. During her fourth period physical education class, Samantha was in a group of approximately five girls that were walking to the track in order to run in preparation for an upcoming examination. Katie Moore ("Katie") was in the group of girls and was also a ninth grade student at the high school. There were at least three students walking behind the group of girls. While the students were walking to the track, Samantha walked behind Katie, placed her hands on the sides of Katie's shorts, and pulled Katie's shorts down, an action commonly referred to as shanking. Katie's undergarments were also pulled down and Katie's rear end was exposed. Katie immediately pulled her shorts up and said an expletive to Samantha out of anger. The three students, two boys and a girl, walking behind Katie and Samantha saw the incident and saw Katie's rear end. Shortly after the incident, Samantha and

Katie ran on the track together, had a conversation, and sat at the same table during lunch. Prior to this incident, Samantha and Katie had been friends for several years and socialized outside of the school environment.

During lunch, Katie informed a substitute teacher that she had been "shanked" by Samantha and that her rear end had been exposed as a result. The substitute teacher advised Katie to report the incident to the school administrators, and after lunch Katie reported the incident to Beth Smith ("Smith"), an administrative intern. After Katie completed a written statement, Smith interviewed several students who corroborated Katie's account of what occurred. Smith then informed Jeff Jernigan ("Jernigan"), the school principal, of the incident and asked how to proceed. Jernigan advised Smith to interview Samantha; however, the interview did not occur as it was near the end of the school day.

At 8:00 a.m. the next morning, Katie's parents discussed the incident with Jernigan. They expressed their displeasure with what occurred and informed Jernigan that they had contacted an attorney and were considering criminal charges. Jernigan asked the school resource officer to participate in the meeting and the officer informed the parents that the only possible criminal charge was assault. The parents declined to file charges and stated they trusted the school to handle the matter. After the meeting, the principal began handling the investigation.

Jernigan discussed the matter with Smith, reviewed the witness statements, talked to Katie twice, and reinterviewed the witnesses. The witnesses corroborated that Samantha "shanked" Katie and that Katie's rear end was exposed as a result. Jernigan then interviewed Samantha. Samantha admitted that she had "shanked" Katie, but denied Samantha's rear end was exposed. Jernigan then asked Samantha if she had any witnesses she wanted Jernigan to interview. After Samantha did not provide any names, he informed Samantha that he was imposing a two-day temporary suspension until a formal hearing could be held and contacted Samantha's father.

Jernigan told Samantha's father that he was imposing a temporary suspension for two days until the formal hearing occurred because Samantha pulled Katie's shorts and panties down. Samantha's father received a copy of two forms—a Notice of Charges and Hearing and a Notice of Temporary Suspension. The Notice of Charges and Hearing document incorrectly stated Samantha had been

fighting with another student in the lunch room. The hearing notice stated a hearing would be held on 9 October 2003 regarding the charges. Later that day, Samantha's father telephoned Jernigan and asked for an expedited hearing. Jernigan informed him that school policy indicated a hearing had to be held between two to five days later.

At the hearing, Samantha's parents informed Jernigan that the notice of charges stated his daughter had been fighting in the lunch room, and Jernigan had the mistake fixed. The parents also expressed concern that prior to the formal hearing they had been receiving phone calls and information that their daughter was going to be suspended for ten days. A Cape Fear High School student submitted a statement to the principal indicating a substitute teacher had informed him Samantha would be suspended for ten days. The parents had also received information from teachers at a middle school that the school planned to impose a ten-day suspension. Jernigan informed Samantha's parents that this matter had not been discussed with any teachers and that a decision had not been made. The parents then asked that another Cape Fear High School student be called as a witness. The student indicated that Samantha had pulled down other female student's pants in the past but that the underwear did not come down in those instances.

After the hearing, Jernigan informed the parents that although Samantha was an honor roll student and did not have any prior disciplinary problems, he was immediately imposing a ten day suspension and recommending to the school superintendent that Samantha be suspended for the remainder of the year. The parents were provided with a form explaining the appeals process.

Samantha's parents contacted a member of the Board regarding the matter. The Board member asked Associate Superintendent Sara Piland ("Piland") to contact Samantha's father. Piland indicated that she had been notified by Jernigan regarding the matter and had discussed possible charges Jernigan could bring against Samantha. She advised Samantha's father to initiate the appeals process as soon as possible so his concerns could be addressed.

On 14 October 2003, a review hearing was held before Joe Twiddy ("Twiddy"), an administrative hearing officer. Twiddy determined the school principal acted in accordance with the Board's policies and administrative procedures. However, Twiddy recommended that the

**IN RE ALEXANDER v. CUMBERLAND CTY. BD. OF EDUC.**

[171 N.C. App. 649 (2005)]

length of Samantha's suspension be reviewed due to her lack of a disciplinary record at the high school. Upon review by Piland, the suspension was upheld but the length was reduced to fifteen days combined with ten hours of school community service.

Samantha's parents petitioned the superior court and were granted a temporary restraining order to allow Samantha to remain in school. The parents also appealed Piland's decision to the Board. On 6 November 2003, a hearing was held before the Board. In addition to the facts surrounding the "shanking" incident, the investigation, and suspension, the Board was also presented with information that there had been several "shanking" incidents at Cape Fear High School involving football players and other male students. Instead of suspending the football players, the football coaches were allowed to resolve the matter. In the incidents involving male students, the parties involved were both male and one individual had a disciplinary record. However, these students were suspended for three to five days only. Jernigan explained that he recommended Samantha be suspended for the rest of the school year because Katie's rear end was exposed and it was the first female on female incident of which he had heard. The Board also heard testimony that "shanking" was a prevalent and frequent activity at the middle school Samantha and Katie attended, that Katie had "shanked" Samantha during the summer between seventh and eighth grade, and that Samantha and Katie remained friends afterwards. After deliberation, the Board upheld the superintendent's recommendation.

On 5 December 2003, Samantha's parents filed a petition for judicial review with the Cumberland County Superior Court. In a 3 September 2003 order, the trial court affirmed the decision of the Board. James Alexander, as guardian ad litem for Samantha Alexander, appeals.

Pursuant to N.C. Gen. Stat. § 115C-391(e), an appeal of a local school board's decision regarding a suspension of a student for a period of time in excess of ten school days but not exceeding the time remaining in the school year is subject to judicial review in accordance with Article 4 of Chapter 150B of the General Statutes, part of the Administrative Procedures Act ("APA"). N.C. Gen. Stat. § 115C-391(c), (e) (2003). "To obtain judicial review of a final decision under [Article 4 of Chapter 150B], the person seeking review must file a petition in the . . . superior court of the county where the person resides." N.C. Gen. Stat. § 150B-45 (2003). "[A] reviewing superior

court 'sits in the posture of an appellate court' and 'does not review the sufficiency of evidence presented to it but reviews that evidence presented to the [local board].' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002) (citations omitted). " 'The proper standard for the superior court's judicial review "depends upon the particular issues presented on appeal." ' " *Id.* at 13, 565 S.E.2d at 17 (citations omitted). Pursuant to N.C. Gen. Stat. § 150B-51(b) (2003):

> [I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

*Id.* "[W]here the gravamen of an assigned error is that the agency violated subsections 150B-51(b)(1), (2), (3), or (4) of the APA, a court engages in *de novo* review." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 895 (2004). "Under the *de novo* standard of review, the trial court ' "considers the matter anew[] and freely substitutes its own judgment for the agency's." ' " *Mayo v. N.C. State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (2005) (citations omitted). "Where the substance of the alleged error implicates subsection 150B-51(b)(5) or (6), . . . the reviewing court applies the 'whole record test.' " *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895. When sitting as an appellate body, the trial court must " ' "set forth sufficient information in its order to reveal the scope of review uti-

lized and the application of that review." ' " *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17 (citations omitted). When an appellate court reviews

> "a superior court order regarding an agency decision, 'the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' "

*Id.* at 14, 565 S.E.2d at 18 (citations omitted).

In the petition for judicial review by the trial court, the petitioner alleged Samantha's due process rights were violated, the superintendent and the Board did not follow proper procedure, the Board committed errors of law, the decision of the Board was unsupported by substantial evidence and the superintendent's and the Board's decision to uphold the long term suspension was arbitrary and capricious. In the 3 September 2004 order affirming the Board's decision, the trial court did not state the standard of review it utilized to determine the issues presented by petitioner. As the trial court failed to state the standard of review, this Court is unable to determine whether the trial court utilized the appropriate review standard and if it did so properly. *See id.* However, as stated by our Supreme Court in *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 355 N.C. 269, 559 S.E.2d 547 (2002), "an appellate court's obligation to review a superior court order for errors of law . . . can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court." *Id.* (adopting the dissenting opinion in 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, Judge, dissenting)); *see also N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. at 665, 599 S.E.2d at 898 (stating "it is well settled that the trial court's erroneous application of the standard of review does not automatically necessitate remand, provided the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)"). Although the trial court did not state the standard of review utilized in rendering its decision, this Court can determine from the record in this case whether the Board's decision should be affirmed, reversed, or modified.

## I. Procedural Due Process Issues

### A. Two-day suspension

**[1]** Petitioner first argues on appeal that Samantha's due process rights were violated in that the principal immediately and improperly suspended Samantha for two days (1) without discussing the disciplinary issue or possible punishment with her parents, (2) after discussing the incident with Katie's parents and a law enforcement officer, and (3) after discussing the incident with the associate superintendent charged with objectively reviewing the disciplinary decision of the principal. Essentially, Samantha argues the principal's decision was not impartial. The argument that a school board's decision was made upon unlawful procedure is reviewed *de novo. Carroll*, 358 N.C. at 659, 599 S.E.2d at 895.

The Board argues a two-day suspension is not subject to appeal or judicial review. N.C. Gen. Stat. § 115C-391(b) (2003) gives the school principal authority to "suspend for a period of 10 days or less any student who willfully violates policies of conduct established by the local board of education[.]" *Id.* However, the statute does not provide for appeal or judicial review of suspensions for ten days or less. *See Stewart v. Johnston County Bd. of Educ.*, 129 N.C. App. 108, 109, 498 S.E.2d 382, 383 (1998) (stating N.C. Gen. Stat. § 115C-391 does not provide for an appeal of a suspension for ten days or less to either the superintendent or to the board of education); *see also* N.C. Gen. Stat. § 115C-391(b), (c), (e). Rather, the existence of an appeal of a two-day suspension, imposed under N.C. Gen. Stat. § 115C-391(b), is governed by N.C. Gen. Stat. § 115C-45 (2003), which provides in pertinent part:

(c) Appeals to Board of Education and to Superior Court.— An appeal shall lie to the local board of education from any final administrative decision in the following matters:

(1) The discipline of a student under G.S. 115C-391(c), (d), (d1), (d2), (d3), or (d4);

. . .

Any person aggrieved by a decision not covered under subdivisions (1) through (4) of this subsection shall have the right to appeal to the superintendent and thereafter shall have the right to petition the local board of education for a hearing, and the local board may grant a hearing regarding any final decision of school personnel within the local school administrative unit. The local

board of education shall notify the person making the petition of its decision whether to grant a hearing.

*Id.* The statute, however, does not provide for further appeal of a two-day suspension imposed pursuant to N.C. Gen. Stat. § 115C-391(b) to the superior court. Therefore, neither the superior court nor this Court had subject matter jurisdiction under N.C. Gen. Stat. § 115C-1 *et seq.* to review the propriety of the initial two-day suspension.

We do note that in *Goss v. Lopez*, 419 U.S. 565, 42 L. Ed. 2d 725 (1975), the United States Supreme Court held in an action brought under 42 U.S.C. § 1983 that prior to imposing a short-term suspension of ten days or less, the school is only required to give the student notice of the charges against her and an opportunity to be heard—i.e., an opportunity to present her version of the incident. *Id.* at 581-84, 42 L. Ed. 2d at 738-40. As N.C. Gen. Stat. § 115C-391 precludes an appeal of a school suspension for ten days or less to the local board of education whose decision is subject to judicial review by the superior court, any claim asserting a student's due process rights were violated when a suspension for ten days or less was imposed would have to be brought in a separate proceeding filed initially in the trial court.

In sum, the trial court lacked subject matter jurisdiction to consider the propriety of the initial two-day suspension imposed under N.C. Gen. Stat. § 115C-391(b). Neither G.S. § 115C-391 nor G.S. § 115C-45 allows an appeal of a two-day suspension to the superior court.

### B. Fifteen Day Suspension

[2] Petitioner also challenges the imposition of the fifteen day suspension arguing her due process rights were violated. As indicated in *Goss*, suspensions for longer than ten days or expulsions for the remainder of the school term or permanently require more formal procedures. *Id.* This Court has held that when a school board seeks to impose a long-term suspension, a student not only has the right to notice and an opportunity to be heard, the student also has the right to a full hearing, an opportunity to have counsel present at the hearing, to examine evidence and to present evidence, to confront and cross-examine witnesses supporting the charge, and to call his own witnesses to verify his version of the incident. *In re Roberts*, 150 N.C. App. 86, 92-93, 563 S.E.2d 37, 42 (2002).

After the initial two-day suspension in this case, the principal suspended Samantha for ten days and recommended the superintendent

suspend her for the remainder of the school year. This decision was made after a school hearing during which Samantha's parents were allowed to present witnesses and ask questions. After hearing the principal's decision, the parents were given an opportunity for a speedy appeal, which occurred within five days of the principal's decision. During this appeal before the administrative hearing officer, Samantha and her parents were represented by counsel. The administrative hearing officer heard the parents' complaints, considered the evidence, and recommended the length of the suspension be reviewed.

Piland considered the administrative hearing officer's recommendation and reduced Samantha's suspension to fifteen days. Although the parents have complained that the principal discussed the incident with Piland prior to the initial school hearing, we do not consider that a due process violation. Piland testified that principals often consult her about cases and she informs them what school policies may have been implicated. She does not tell the principal what to charge and does not suggest a suspension length. Such a procedure may actually benefit a student in that a student is not suspended for an action or behavior that does not violate the school code.

After Piland's decision was rendered, the parents were afforded an opportunity to appeal to the Board. During this appeal, the parents were represented by counsel, were able to cross-examine Samantha's accusers and were able to present witnesses on Samantha's behalf. The parents were also able to present documentary evidence and legal arguments to the Board. After the Board rendered its decision, the North Carolina statutes afforded them an opportunity to seek review in the court system and ultimately to appeal to this Court. Accordingly, we conclude Samantha was afforded notice, an opportunity to be heard, and the opportunity to examine and cross-examine witnesses regarding the incident and length of suspension. Therefore, her due process rights were not violated.

## II. Evidentiary Issues

### A. Did Substantial Evidence Support the Board's Decision

[3] Next, Samantha argues the Board's decision was not supported by substantial evidence. The whole record test applies to this argument. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895.

The "whole record" test requires the reviewing court to examine all competent evidence to determine whether the agency decision

is supported by substantial evidence. The administrative findings of fact, if supported by substantial evidence in view of the entire record, are conclusive upon a reviewing court. Notably, "[t]he 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result."

*Farber v. N.C. Psychology Bd.*, 153 N.C. App. 1, 14, 569 S.E.2d 287, 297 (2002) (citations omitted).

In this case, Samantha admitted she "shanked" Katie, which the school determined was a violation of the student code of conduct. Specifically, the school system charged Samantha with the following policy violations:

**DISRUPTIVE BEHAVIOR**

Disruptive behavior constitutes any physical or verbal action which reasonably could or does substantially disrupt, disturb, or interfere with the peace, order, and/or discipline within the learning environment or during any school related activity and any verbal, physical, or visual forms of a sexual nature that create a hostile or abusive educational environment for other students. No student shall engage in behavior which is indecent, disreputable or of a sexual nature.

**DISORDERLY CONDUCT**

Disorderly conduct is any action that disrupts the peace and order of the school. . . .

**HAZING**

To annoy any student by playing abusive or ridiculous tricks upon him, to frighten, scold, beat, or harass him or subject him to personal indignity is hazing.

As stated, Samantha admits she "shanked" Katie by pulling down her pants. However, she contends she did not intend for Katie's panties to come down. Nonetheless, pulling another student's pants down can be construed as a ridiculous trick that is annoying and harassing which may disrupt the school environment. Samantha argues that because the P.E. class was not disrupted by the incident she did not violate the disorderly conduct and disruptive behavior provisions of the Student Code of Conduct. However, the record indicates students

were discussing the event during exam week and one of the boys that witnessed the event said "do it again" after seeing Samantha "shank" Katie. The principal testified that "[h]aving [Samantha's] presence there and the students continuing to talk about this issue may have become an issue and created a disruption to the learning environment." Thus, Samantha's actions led to some students not focusing upon their exams and to another student encouraging such behavior. Accordingly, we conclude substantial evidence supports the charges of disruptive behavior, disorderly conduct, and hazing.

### B. Was the Board's Decision Arbitrary and Capricious

[4] Finally, Samantha argues the Board's decision was arbitrary and capricious because the male students, including football players, did not receive similar punishment. "In all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct . . . ." N.C. Gen. Stat. § 115C-44(b) (2003). " 'Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment.' " ' " *Rector v. N.C. Sheriffs' Educ. and Training Standards Comm.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 617 (1991) (citations omitted). We note that the whole record test also applies to an argument that a Board's decision was arbitrary and capricious.

We first note that although Samantha states there was a difference in the suspension length for the girls and boys accused of "shanking," she did not assign the equal protection argument as error. *See* N.C.R. App. P. 10(a) (stating "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"). We also note that Samantha did not present any authority indicating the Board's actions or decision violated the equal protection clause. See N.C.R. App. P. 28(b)(6) (stating "[t]he body of the argument shall contain citations of the authorities upon which the appellant relies"). Even assuming Samantha had properly presented this issue for our review, we note that Samantha's equal protection rights were not violated in this case. Under equal protection clause analysis, "classifications, including gender and illegitimacy, trigger intermediate scrutiny, which requires the state to prove that the regulation [or action] is substantially related to an important government interest." *Department of Transp. v. Rowe*, 353 N.C. 671, 675, 549 S.E.2d 203, 207 (2001) (citing *Clark v. Jeter*, 486

U.S. 456, 100 L. Ed. 2d 465 (1988), and *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397 (1976)).

In this case, Samantha was initially suspended for two days. After a hearing, the principal increased Samantha's suspension length to ten days and recommended to the superintendent that Samantha's suspension be extended for the remainder of the school year. In prior "shanking" cases, the football players were not suspended and two students received a three to five day suspension. The principal testified he felt a longer suspension was warranted in Samantha's case because Katie's rear end had been exposed. In the prior cases involving the male students, the shanked student's bottom or genitalia had not been exposed. Thus, the principal articulated a valid reason for the difference in the suspension length.

The principal's decision was reviewed by the school superintendent's office, which determined Samantha's suspension length would be increased to a total of fifteen days. Samantha appealed to the school board, and after hearing testimony and reviewing the evidence, the school board upheld the superintendent's decision. We conclude the Board's decision to uphold the superintendent's recommendation that Samantha's suspension be increased to a total of fifteen days was not arbitrary and capricious in that the decision did not lack reason and was not whimsical. The decision to impose a lengthier suspension had a gender-neutral basis—i.e., the exposure of a student's rear end. Finally, we note that the initial recommendation that Samantha be suspended for the remainder of the school year and the suspension length of fifteen days are within the school system's guidelines for suspension length for disruptive behavior, disorderly conduct, and hazing.

In sum, Samantha's due process rights were not violated. She received notice of the allegations against her, an opportunity to respond, an opportunity to present witnesses, and she was able to appeal the principal's decision to the superintendent's office, the Board, and to the superior court. Second, the Board's decision was supported by substantial evidence and was not arbitrary and capricious.

Affirmed.

Judges HUDSON and GEER concur.