**IN RE RONE v. WINSTON-SALEM/FORSYTH CNTY. BD. OF EDUC.**

[207 N.C. App. 618 (2010)]

IN RE VICTORIOUS RONE BY AND THROUGH ARDEAL AND DIANNE ROSEBORO, PETITIONERS v. WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDUCATION, RESPONDENT

No. COA09-1180

(Filed 2 November 2010)

**1. Pleadings— amendment—petition for review of administrative ruling**

The trial court did not err by allowing petitioners to amend their petition for judicial review pursuant to N.C.G.S. § 1A-1, Rule 15(a) to assert that a student was improperly assigned to an alternative school. Although respondent contended that the Administrative Procedure Act has no mechanism for amending a petition, the Rules of Civil Procedure apply when a differing procedure is not prescribed by statute.

**2. Pleadings— motion to amend—awareness of claim—no prejudice**

The trial court did not abuse its discretion by allowing petitioners' motion to amend where respondent was aware of petitioners' claim more than a month before the superior court hearing and was not materially prejudiced by the timing of the amendment.

**3. Schools and Education— alternative learning center— review of assignment—plain language of policy**

The trial court erred by concluding that a school board policy that required a superintendent-level review before a student was confined to an alternative learning center did not apply in this case. The plain language of the school board policies revealed that they applied to students assigned to alternative learning programs as an alternative to suspension or expulsion, as here.

**4. Appeal and Error— Mootness—school board policy not followed—corrected next year**

A high school student's appeals from his assignment to an alternative learning center were not moot. The fact that he was offered the required superintendent-level hearing for the next year's school assignment was irrelevant because his appeal concerned only the assignment for the prior year.

**5. Constitutional Law— due process—assignment to alternative learning center—evidentiary hearing not offered**

The due process rights of a high-school student were violated where he was assigned to an alternative learning center without a superintendent-level review at which he could present evidence or cross-examine witnesses. The Board-level hearing later provided to petitioners was essentially an appellate hearing, conducted in this case without the superintendent-level or evidentiary hearing.

**6. Schools and Education— assignment to alternative learning center—policy not followed—remedy**

Under school policy, an assignment to an alternative learning center as an alternative to suspension could necessarily only last until the completion of that school year. An appellate determination that the assignment was erroneously made could no longer affect that assignment, nor could the Court of Appeals could grant petitioners' request that the student be ordered back into the regular class room immediately. However, the case was remanded for expungement of the assignment to the alternative program from the student's record.

Appeal by petitioners from order entered 21 July 2009 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 11 February 2010.

*The Roseboro Law Firm, PLLC, by John Roseboro, for petitioners-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Reid C. Adams, Jr., and Gemma L. Saluta, for respondent-appellee.*

*Katherine J. Brooks, staff attorney, and Allison B. Schafer, legal counsel, for amicus curiae North Carolina School Boards Association.*

CALABRIA, Judge.

Victorious Rone ("Rone"), by and through his grandparents and legal guardians Ardeal Roseboro ("Mr. Roseboro") and Dianne Roseboro ("Mrs. Roseboro") (collectively "petitioners") appeal the trial court's order affirming the Winston-Salem/Forsyth County School Board of Education's ("WSFCS," "the Board," or "respon-

dent") letter opinion of 9 October 2008 assigning Rone to an alternative school for the 2008-09 school year. We reverse and remand.

## I. Background

During the 2007-08 school year, Rone was a ninth grade student at R.J. Reynolds High School ("RHS") in Winston-Salem, North Carolina. On 14 May 2008, Rone threatened other students at RHS and drew a picture showing a female student being stabbed. The next day, RHS Assistant Principal Tony Mills ("Asst. Principal Mills"), Guidance Counselor Mary Anne McClain ("Ms. McClain"), and the school resource officer ("SRO") met with petitioners, informed them of Rone's threats, and showed them the drawing. Ms. McClain also told petitioners that students and teachers were concerned that Rone talked to an imaginary person named "Bob." Mr. Roseboro replied that he felt that other students were "out to get" Rone and that the meeting was "an attempt for [other] students to start rumors about" Rone. Ms. McClain attempted to help Rone by recommending an evaluation by a WSFCS psychologist. Petitioners preferred to select someone of their own choosing rather than have Rone participate in the WSFCS psychological evaluation. Rone was subsequently suspended from RHS for two days, 15 and 16 May 2008, for communicating threats.

Rone returned to RHS on 19 May 2008. Upon his return, administrators found a drawing in Rone's backpack that included the statement, "Are you ready? To die." Asst. Principal Mills subsequently took statements from other students who felt threatened by Rone's behavior. Students voiced concerns that Rone "talked about blood a lot" and "about hating . . . and killing people." Students also stated that Rone tried to cut or stab himself during math class with a mathematical compass, and that Rone told a student he wanted to "kill everybody in [the] school . . . burn our corps[es] and then kill hi[m]self."

On 20 May 2008, Asst. Principal Mills met with Mrs. Roseboro and told her that Rone's in-school suspension ("ISS") was a temporary placement until a risk assessment was performed. However, if petitioners refused the risk assessment, Rone would have to continue in either ISS or RHS's Alternative Learning Center ("ALC") for the remainder of the school year. Asst. Principal Mills explained to Mrs. Roseboro that the risk assessment was necessary to determine if Rone was a danger to himself or others.

Petitioners refused the risk assessment because Mr. Roseboro denied that Rone posed a threat to himself or others. Consequently,

Rone remained in ISS for the remainder of the 2007-08 school year. While in ISS, Rone received his academic work in a closely supervised setting to minimize the risk to himself or others.

During the summer of 2008, respondent attempted to coordinate a meeting between the administrators of RHS and petitioners to discuss a resolution. Petitioners' counsel requested certain documents prior to scheduling a meeting. Respondent provided the documents in early July 2008 and continued to request a meeting. The meeting was finally held on 22 August 2008, the last day of RHS's summer break. Rone, Mrs. Roseboro, and petitioners' counsel attended, along with RHS Principal Art Paschal ("Principal Paschal"), WSFCS Assistant Superintendent Paul Puryear ("Asst. Superintendent Puryear"), and respondent's counsel.

On 25 August 2008, the first day of the 2008-09 school year, Asst. Superintendent Puryear assigned Rone to the ALC until completion of a risk assessment. Asst. Superintendent Puryear reiterated that the purpose of the risk assessment was to determine if Rone was a threat to himself or others at RHS. The decision to assign Rone to the ALC was based upon, *inter alia*, a Level 1 Screening Assessment ("the screening"),[1] Level II Risk Assessment Referrals ("the referrals") completed by two of Rone's teachers, Rone's two drawings, and ten statements and/or emails regarding matters pertaining to Rone's threats or potential psychological condition.

According to the screening completed by Ms. McClain, Rone displayed "some aggressive behavior" along with "violent fantasies, drawings, or comments." In addition, Rone "expressed threats or plans to harm self or others," seemed "unable to express or feel empathy, sympathy or remorse," had "delusional ideas, feelings of persecution, or command hallucinations[;] [a]cted on beliefs," had "evidence of plan (drawings, writings); able to identify others who overheard talking about revenge or attack," and that "multiple concerns [have been] expressed by others; people fearful."

The referrals, completed by two of Rone's teachers, found that Rone was "socially withdrawn," had "excessive feelings of isolation and being alone," displayed uncontrolled anger, talked or wrote about violence or death, "seem[ed] depressed; cries easily, sleeps, etc.," engaged in "self-injurious behavior or threats (spoken or written) of

---

1. This low-level screening is not the risk assessment performed by the psychologist requested by the Board.

suicide" and "serious threats of violence toward others," and "communicated a threat directly to his target." One teacher observed that Rone would "rock back and forth to soothe himself," "hit himself in the head repeatedly or bang[] his head on a desk/blackboard repeatedly," and "scratch[] himself with a compass in class." Another teacher noted that Rone threatened and had "several 'heated' interactions" with other students in class when they asked him to be quiet when he talked to "Bob." Asst. Superintendent Puryear offered to have the risk assessment performed by a WSFCS psychologist at no cost to petitioners. However, petitioners again refused to allow any WSFCS psychologist to examine Rone and also refused to seek a private risk assessment performed at their own expense.

On 28 August 2008, petitioners' attorney requested a hearing to appeal the ALC assignment. In response, respondent scheduled a hearing for 2 September 2008. When petitioners requested an October hearing, the hearing was scheduled and held on 7 October 2008 before a three-person hearing panel of the Board ("the Board Panel"). Asst. Superintendent Puryear, Principal Paschal, and Asst. Principal Mills were present and represented by counsel. Petitioners were also present and represented by counsel. Both parties presented evidence for fifteen minutes. During petitioners' presentation, they presented a single witness on their behalf, Mr. Monty Gray ("Gray"), the ALC Facilitator/Teacher. In addition, petitioners also received a five-minute rebuttal period, during which they attempted to cross-examine Asst. Principal Mills. However, at the completion of the five-minute rebuttal period, petitioners' cross-examination was not complete, but it was stopped by the Board Panel at that time. Petitioners were not allowed any additional time to cross-examine any witnesses or argue in rebuttal.

On 9 October 2008, the Board Panel issued an opinion that the matter was not "a discipline based assignment decision or a medical decision." It concluded that there was a reasonable basis to suspect or believe that Rone "is or may be a danger to himself or others" at RHS. The Board Panel further upheld the decision of the RHS administrators to assign Rone to the ALC until a risk assessment was completed and Rone was deemed not to be a threat to himself or others.

On 10 November 2008, petitioners filed a Petition for Judicial Review in Forsyth County Superior Court, alleging Rone's assignment to the ALC: (1) violated the United States and North Carolina Constitutions; (2) violated state law and local board policy; (3) was

made upon unlawful procedure; (4) was affected by other errors of law; (5) was unsupported by substantial evidence; and (6) was arbitrary and capricious. Petitioners asked that respondent's decision upholding Rone's assignment to the ALC be reversed and that respondent be ordered to immediately return Rone to regular classes. On 11 March 2009, petitioners filed a Motion to Amend the Petition for Judicial Review ("Motion to Amend"), which the trial court granted on 26 March 2009. The Motion to Amend added to the Petition for Judicial Review the additional allegation that respondent denied petitioners a superintendent-level hearing, as required by respondent's policies. On 21 July 2009, the trial court affirmed respondent's decision assigning Rone to the ALC ·pending a risk assessment. Petitioners appeal.

## II. Standard of Review

" '[A] reviewing superior court sits in the posture of an appellate court and does not review the sufficiency of evidence presented to it but reviews that evidence presented to the [local board].' " *In re Alexander v. Cumberland Cty. Bd. of Educ.*, 171 N.C. App. 649, 653-54, 615 S.E.2d 408, 413 (2005) (internal quotations omitted) (quoting *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002)). "The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal." *Id.* at 654, 615 S.E.2d at 413 (internal quotations and citations omitted). Pursuant to N.C. Gen. Stat. § 150B-51(b) (2008):

In reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

. . .

(3) Made upon unlawful procedure[.]

*Id.* (quoting N.C. Gen. Stat. § 150B-51). Where the assigned error is that the school board violated N.C. Gen. Stat. § 150B-51(b)(1) or (3), a court engages in *de novo* review. *Id.* (citation omitted). "Under the *de novo* standard of review, the trial court considers the matter anew and freely

substitutes its own judgment for the agency's." *Id.* (internal quotations, citation, and brackets omitted). When an appellate court reviews

> a superior court order regarding an agency decision, "the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly."

*Id.* at 655, 615 S.E.2d at 413 (quoting *Mann Media, Inc.*, 356 N.C. 14, 565 S.E.2d at 18).

In the instant case, there is no dispute that the trial court exercised the appropriate scope of review. Instead, petitioners challenge only the trial court's *de novo* review of Rone's procedural due process claims.

### III. Amendment of Petition

[1] Initially, we address respondent's cross-assignment of error that the superior court erred in allowing petitioners to amend their petition for judicial review in order to assert that Rone was erroneously denied a superintendent-level hearing. We disagree.

The North Carolina Rules of Civil Procedure "govern the procedure in the superior . . . courts of the state of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." N.C. Gen. Stat. § 1A-1, Rule 1 (2008). N.C. Gen. Stat. § 1A-1, Rule 15(a) (2009) ("Rule 15(a)") allows pleadings to be amended. Under Rule 15(a), leave to amend should be freely granted. *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 89, 665 S.E.2d 478, 490, *disc. review denied*, 362 N.C. 679, 669 S.E.2d 741 (2008). The decision to allow a motion to amend under Rule 15(a) is directed to the sound discretion of the superior court and is accorded great deference. *Id.* The exercise of the superior court's discretion cannot be disturbed on appeal absent a clear showing of abuse of discretion. *Id.* The burden is on the opposing party to establish that it was materially prejudiced by an amendment. *Mosley & Mosley Builders v. Landin LTD.*, 97 N.C. App. 511, 516, 389 S.E.2d 576, 579 (1990).

Respondent contends that the superior court erred in allowing petitioners' Motion to Amend because N.C. Gen. Stat. § 150B-1 *et seq.*, the North Carolina Administrative Procedure Act ("APA"), has no "mechanism that allows a petitioner to amend his or her petition." However, the Rules of Civil Procedure apply to all proceedings in superior court

"except when a differing procedure is prescribed by statute." N.C. Gen. Stat. § 1A-1, Rule 1. There are no provisions in the APA that either permit or forbid an amendment to a petition for judicial review. Since an amendment procedure is not found in the APA, the superior court properly applied Rule 15(a) in the instant case.

[2] Respondent next contends petitioners' amendment was unduly delayed because petitioners filed their Motion to Amend on 11 March 2009, a few days after the Board served its superior court brief on 6 March 2009. Additionally, respondent complains that the superior court did not rule on the Motion to Amend until immediately before the hearing on the petition for judicial review. Finally, respondent argues that the lack of a superintendent-level hearing was not presented as an issue before the Board. Thus, respondent contends, allowing the Motion to Amend would "frustrate the adversarial process."

N.C. Gen. Stat. § 150B-51(b)(3) (2008) specifically allows a petitioner to challenge any decision by an administrative body that was made upon unlawful procedure before the superior court. The Petition for Judicial Review filed by petitioners on 10 November 2008 alleged that respondent's decision was made upon unlawful procedure, although it did not specifically assert respondent's failure to provide petitioners with a superintendent-level hearing. However, both respondent's appellate brief and its opposition to petitioners' Motion to Amend indicate that petitioners initially raised the issue in their brief to the superior court on 4 February 2009. Petitioners' Motion to Amend alleged that respondent's brief addressed this argument, and respondent asserts that it noted in its brief to the superior court that petitioners' claim regarding the absence of a superintendent hearing was not raised in the Petition for Judicial Review.[2] Based on the information in respondent's opposition to the Motion to Amend, respondent was aware of petitioners' claim regarding a superintendent-level hearing more than a month before the superior court hearing on 20 March 2009. Thus, we do not believe the timing of petitioners' amendment materially prejudiced respondent. Because the Motion to Amend was not unduly

2. Although both parties rely upon the content of respondent's superior court briefs in their respective arguments on this issue, neither petitioners' nor respondent's brief is included in the record on appeal. As a result, we are unable to verify the contents of these briefs. Although our resolution of this issue did not require any information contained in these superior court briefs, we remind respondent, who raised this issue as a cross-assignment of error, that our appellate rules require the record on appeal to contain "all other papers filed and statements of all other proceedings had in the trial court which are necessary to an understanding of all [cross-]errors assigned . . . ." N.C.R. App. P. 9(a)(1)(j) (2008).

**IN RE RONE v. WINSTON-SALEM/FORSYTH CNTY. BD. OF EDUC.**

[207 N.C. App. 618 (2010)]

delayed and N.C. Gen. Stat. § 150B-51(b)(3) specifically allows a petitioner to challenge a decision by an administrative body that was made upon an unlawful procedure, we determine that the trial court did not abuse its discretion by allowing petitioners' Motion to Amend. This cross-assignment of error is overruled.

## IV. Procedural Due Process

### A. School Board Policy

[3] Petitioners argue that Rone's due process rights were violated because respondent's Policy 5131, which requires a superintendent-level hearing before a student is confined to an ALC, applies in the instant case and was not followed by respondent. Thus, respondent contends, the superior court erred by concluding that Policy 5131 did not apply to Rone. We agree.

Policy 5118 governs "Assignment To Alternative Schools: Conditions for Assignment." By its terms, Policy 5118 "applies to assignments to alternative programs *that are an alternative to suspension from school* for up to the remainder of the school year or for 365 days or an alternative to expulsion." (emphasis added). Article VII.A of Policy 5118, titled "Due Process Procedures," states:

> A.  Students recommended for an assignment to an alternative school or the ALC program at a regular high school as an alternative to suspension are entitled to a due process hearing regarding that recommendation as provided by Policy 5131.

Policy 5118, Art. VII.A (emphasis added). Under Policy 5131, Art. VI.C:

> The principal may recommend to the superintendent the assignment of a student to an alternative school (or program) or a suspension of a student from all school programs for a period in excess of ten school days but not exceeding the time remaining in the school year if the student willfully violates the rules of conduct established by or in accordance with this policy.

Policy 5131, Art. VI.C.1. Policy 5131, Article VI.C.3 and 5 subsequently provide for a superintendent-level hearing and its accompanying due process procedures for students disciplined under Policy 5131, Article VI.C.1.

When the language of a school board policy is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the policy. *See North Carolina Dept. of Revenue v. Hudson*, —— N.C.

App. ——, ——, 675 S.E.2d 709, 710 (2009) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.") (internal quotations and citation omitted). The plain language of Policies 5118 and 5131 reveals that they apply to students who have been assigned to alternative learning programs as an alternative to suspension or expulsion.

In the instant case, after petitioners' initial refusal to submit to a risk assessment, Rone was placed in the ISS classroom for the remainder of the 2007-08 school year. When petitioners continued to refuse respondent's request for a risk assessment, respondent then assigned Rone to the ALC until a risk assessment was completed. Since Rone had previously been suspended for his refusal to submit to a risk assessment, his assignment to the ALC for the exact same behavior necessarily constituted an alternative to suspension.

Additionally, although the Board Panel's letter opinion of 9 October 2008 indicated that it did not consider Rone's assignment to the ALC to be a disciplinary assignment, both Principal Puryear and the Board Panel's letters informed petitioners that, pursuant to state law, Rone's assignment to the ALC would remain in his cumulative record until five calendar years after Rone graduates or withdraws from school. The letters then informed petitioners of the procedure for expunging the assignment from Rone's record. This expungement procedure was taken verbatim from N.C. Gen. Stat. § 115C-402 (2008), which permits expungement from a student's record any "notice of suspension or expulsion." The notice given to petitioners by both Principal Puryear and the Board Panel was the exact notice required by Policy 5131, Article VI.G, to be given "[w]hen notice is given to students or parents of a suspension of more than 10 days or expulsion[.]"

Rone's placement in ISS at the end of the 2007-08 school year, coupled with the fact that petitioners were provided with the same procedures to remove the assignment from his student record as the procedures required to expunge a long-term suspension or expulsion from his student record, makes Rone's assignment to the ALC "an alternative to suspension from school" under Policy 5118. As a result, petitioners were entitled to a due process hearing regarding that assignment as provided by Policy 5131, and the superior's court conclusion of law that Policy 5131 was not applicable was error.

## B. Motion to Dismiss

[4] On 3 March 2010, respondent filed a Motion to Dismiss the Appeal, alleging that petitioners' appeal was moot because respondent offered petitioners a superintendent-level hearing regarding Rone's assignment to the ALC for the 2009-10 school year. We have determined that Rone was assigned to the ALC as an alternative to suspension and that his assignment therefore was subject to the procedures in Policy 5131. Under Policy 5131, the principal may only recommend assignment to the ALC "for a period in excess of ten school days but not exceeding the time remaining in the school year. . . ." Policy 5131, Art. VI.C.1. Therefore, petitioners' appeal concerns only the assignment of Rone to the ALC for the 2008-09 school year. The fact that petitioners have been offered a superintendent-level hearing for Rone's 2009-10 assignment to the ALC is immaterial to the issues in the instant case. Accordingly, respondent's motion to dismiss petitioners' appeal as moot is denied.

## C. Adequate Due Process

[5] Respondent argues, and the trial court concluded as a matter of law, that the failure of respondent to provide petitioners with a superintendent-level hearing was harmless, as petitioners were later provided with an adequate due process hearing by the three-member Board Panel. In making this determination, the superior court relied upon *Goodrich v. Newport News School Bd.*, 743 F.2d 225 (4th Cir. 1984) and *In re Alexander, supra.* In *Goodrich*, the Court held that, for termination of a public school teacher, "[m]inimal procedural due process required . . . adequate notice, a specification of the charges against [the teacher], an opportunity to confront the witnesses against [the teacher], and an opportunity to be heard in [the teacher's] own defense." 743 F.2d at 227 (internal quotations and citation omitted). In *In re Alexander*, this Court held that a long-term suspended student's due process rights were not violated by a hearing where the student was represented by counsel, in addition to presenting and cross-examining witnesses, presenting documentary evidence, and making legal arguments. 171 N.C. App. at 658, 615 S.E.2d at 415. An examination of the hearing procedures and the transcript of the Board Panel hearing indicates that while petitioners' hearing before the Board Panel met some of the due process requirements listed in *Goodrich* and *In re Alexander*, it failed to adequately provide full due process protections.

IN RE RONE v. WINSTON-SALEM/FORSYTH CNTY. BD. OF EDUC.

[207 N.C. App. 618 (2010)]

Based on the policy's guidelines, the superintendent-level hearing is an evidentiary hearing. *See* Policy 5131, Art. VI.C. The purpose of this hearing is "(i) to determine whether the grounds [for alternative school assignment] are true and substantiated and (ii) if true and substantiated, whether the student's behavior warrants an alternative school assignment . . . ." *Id.* At this hearing, the student may be represented by his parent or guardian, or by an attorney of his choice. *Id.* The hearing takes place before a neutral hearing officer, and the principal or his designee has the burden of proving by the greater weight of the evidence that the student has violated the policy. *Id.* Both the principal and the student are permitted to present witnesses and evidence, and both sides are permitted to cross-examine the witnesses presented by the opposing side. *Id.* The student is permitted to appeal the decision of the superintendent-level hearing to the Board, pursuant to Policy 5131, Art. VI.C.7.

In contrast, petitioners' challenge to Rone's assignment to the ALC was a Board-level hearing conducted pursuant to the grievance procedure in Policy 5145. Under this policy, this Board hearing essentially operates as an appellate hearing. The policy requires that "a written record of all prior proceedings shall be prepared by the school attorney that fairly and accurately expresses the facts and contentions of all the parties to the grievance[.]" Policy 5145, Art. IV.C.3. "In addition, each party shall be allowed to prepare a written statement in support of his/her position in respect to the grievance[.]" Policy 5145, Art. IV.C.4. Each side is permitted fifteen minutes to make their primary argument. However, "[n]o new evidence shall be admitted at the hearing" and "the parties shall not be entitled to cross-examine or question any other party to the grievance." Policy 5145, Art. IV.C.5. Finally, after the hearing is concluded, "[t]he hearing panel shall render a decision, in writing, based upon a review of the whole record and the presentations made at the hearing[.]" Policy 5145, Art. IV.C.6.

In the instant case, the Board's decision, which "unanimously affirmed the decision" to assign Rone to the ALC, was made without the benefit of the superintendent-level hearing. A review of the transcript indicates that the Board Panel did not strictly comply with Policy 5145, and permitted petitioners to call a single witness, gave petitioners five minutes of rebuttal time, and allowed petitioners to cross-examine Mills during their rebuttal time.[3] However, even though the Board allotted

---

3. Unlike Policy 5145, a Board-level hearing under Policy 5131, which is a review of the superintendent-level hearing sought by petitioners, would have permitted these procedures in some circumstances.

more due process measures to petitioners than were required by Policy 5145, these measures were still ultimately inadequate. While petitioners were permitted to present arguments and a single witness on their behalf at the Board hearing, the amount of time the witness testified counted as part of the fifteen minutes allotted for their primary argument. Moreover, while petitioners were allowed to ask some questions of Asst. Principal Mills during their five-minute rebuttal time, their cross-examination was cut off by the Hearing Panel after the expiration of the five-minute period, before the cross-examination was complete. Petitioners' attorney specifically objected to the cessation of his cross-examination. Once the five-minute rebuttal time was complete, petitioners were not permitted to cross-examine any additional administrators or witnesses, or argue in rebuttal. Under these circumstances, respondent violated Rone's due process rights by failing to provide petitioners with an adequate opportunity to present evidence or cross-examine witnesses against Rone. Therefore, we determine that Rone's assignment to the ALC was made upon unlawful procedure, and we reverse the trial court's order affirming the decision of the Board.

### C. Remedy

[6] In the instant case, the Petition for Judicial Review specifically sought: (1) a reversal of respondent's assignment of Rone to the ALC; (2) an order for respondent to allow Rone to return immediately to the regular classroom; (3) to expunge Rone's academic record of all references to the assignment to the ALC; and (4) that the costs of the action, including reasonable attorney's fees, be taxed to respondent. At the time this appeal was heard by this Court, Rone had already spent the entire 2008-09 school year in the ALC. Petitioners correctly note that Rone's assignment to the ALC by the Board did not contain a termination date for that assignment. Thus, petitioners contend, Rone has been assigned to the ALC for an indefinite period of time and that this assignment is ongoing.

However, as previously noted, the principal may only recommend assignment to the ALC "for a period in excess of ten school days but not exceeding the time remaining in the school year . . . ." Policy 5131, Art. VI.C.1. We have determined, and petitioners themselves have vociferously argued, that Rone was assigned to the ALC as an alternative to suspension and that his assignment therefore fell under Policy 5131. Thus, pursuant to Policy 5131, Rone's assignment to the ALC could necessarily only last until the completion of the 2008-09 school year.

As a result, our determination that Rone's assignment to the ALC for the 2008-09 school year was made upon unlawful procedure can no longer affect that assignment. Since our review is limited to whether Rone's assignment to the ALC for the 2008-09 school year was valid, our determination that the assignment was invalid does not allow us to grant petitioners' request that Rone be ordered back into the regular classroom immediately, as the school year at issue in the instant case has been completed. Any decision by respondent to assign Rone to the ALC for any time subsequent to the 2008-09 school year would be considered a new assignment under Policy 5131. Such an assignment would once again need to be contested pursuant to the procedure outlined in that policy and then, if necessary, appealed to the superior court, before it could be appealed to this Court.

However, since it is no longer possible to provide Rone with adequate due process to challenge his assignment to the ALC for the 2008-09 school year, we remand the case to the superior court with instructions to further remand the case to the School Board in order to expunge the assignment to the ALC for the 2008-09 school year from Rone's student record. On remand, the superior court should also determine whether petitioners are entitled to the costs of the action.

## VI. Conclusion

It is unfortunate that the instant case needed to be resolved by this Court, when cooperation between the parties could have resulted in simpler and less costly resolutions. We do not wish our disposition to preclude schools from being able to adequately protect their faculty, staff, and students from those who may be a threat to themselves or others. We recognize that " 'school districts are in the best position to judge the student's actions in light of all the surrounding circumstances' " and craft a remedy " 'to fit the unique circumstances of each student's situation.' " *King v. Beaufort County Bd. of Educ.*, —— N.C. ——, ——, —— S.E.2d ——, —— (2010) (quoting *In Re RM*, 2004 WY 162, ¶ 25, 102 P.3d 868, 876 (Wyo. 2004)).

However, our review of the instant case is limited to the interpretation and application of respondent's specific policies which were in place at the time of Rone's ALC assignment to the facts which led to the assignment. Because Rone's assignment to the ALC was an alternative to suspension under respondent's policies, petitioners were entitled to a superintendent-level due process hearing as a result of that assignment. Respondent failed to provide petitioners with ade-

quate due process to support a long-term assignment to the ALC under its procedures which were in place at the time of the assignment.

Rone's assignment to the ALC for the 2008-09 school year was an alternative to suspension under Policy 5118. As a result, petitioners were entitled to the due process superintendent-level hearing set out in Policy 5131. The Board Panel hearing actually provided to petitioners was inadequate to satisfy the requirements of due process. Therefore, the order of the superior court affirming respondent's decision to assign Rone to the ALC is reversed. This disposition makes it unnecessary to consider petitioners' additional assignments of error.

Because the 2008-09 school year is complete, our courts can no longer order respondent to allow Rone to return to the regular classroom for that school year. However, since Rone's assignment to the ALC was made upon unlawful procedure, it should be expunged from his student record. Consequently, we remand the instant case to the superior court for further remand to the Board to expunge Rone's assignment to the ALC for the 2008-09 school year. Additionally, on remand, the superior court should determine whether petitioners are entitled to the costs of the proceedings.

Reversed and remanded.

Judges GEER and STEPHENS concur.