DOROTHY DAVIS, PETITIONER-APPELLANT v. THE MACON COUNTY BOARD OF EDUCATION, RESPONDENT-APPELLEE

No. COA05-1337

(Filed 1 August 2006)

**1. Appeal and Error— assignment of error—failure to cite record pages**

An appeal was heard despite the failure to cite record pages corresponding with each assignment of error where the appellate court was able to determine the issues in the case.

**2. Administrative Law— appeal from school board—issue of fact—whole record review**

The trial court correctly engaged in whole record review where a Board of Educations's motivation for not renewing a teacher's contract was manifestly a question of fact.

**3. Schools and Education— teacher's contract—not renewed—whole record review—evidence sufficient**

The trial court did not misapply the whole record standard of review in an appeal from the school board's decision not to renew a teacher's contract. The court looked at all of the evidence, determined that there was substantial evidence to support the board's determination, and did not substitute its judgment for that of the board.

**4. Schools and Education— teacher's contract not renewed— review of basis for recommendation**

A school board's inquiry satisfied its duty to determine the substantive basis for the superintendent's recommendation not to

renew a teacher's contract and thus to deny her tenure and its duty to assure that the nonrenewal was not for a prohibited reason. The contract was not renewed because petitioner threatened to be a counter-productive force for morale at the school.

## 5. Schools and Education— appeal of nonrenewal of teacher's contract—motion for reconsideration denied

The trial court did not abuse its discretion by not reconsidering a teacher's appeal of the decision not to renew her contract where the board had presented erroneous information. The whole record test was properly applied.

## 6. Appeal and Error— preservation of issues—assignment of error—argument not included

An argument not listed in the assignment of error was not addressed.

Appeal by petitioner from orders entered 10 June 2005 and 5 July 2005 by Judge James L. Baker, Jr. in Superior Court, Macon County. Heard in the Court of Appeals 11 May 2006.

*Ferguson, Stein, Chambers, Gresham & Sumter, P.A., by S. Luke Largess, for petitioner-appellant.*

*Fisher & Phillips, LLP, by Shannon Sumerell Spainhour and Mason G. Alexander, for respondent-appellee.*

*Tharrington Smith, by Neal A. Ramee; and Allison B. Schafer, for the North Carolina School Boards Association, amicus curiae.*

McGEE, Judge.

The Macon County Board of Education (the board) hired Dorothy Davis (petitioner) in August 2000 to teach high school English at Nantahala School. At the end of petitioner's fourth year of teaching, the principal of Nantahala School, Charles Baldwin (the principal), recommended to Superintendent of Macon County Schools Rodney Shotwell (the superintendent), that petitioner's contract not be renewed.

The superintendent conducted an investigation regarding the principal's recommendation not to renew petitioner's contract. The superintendent met with the principal and with petitioner, and re-

viewed notes provided by each of them. The record tends to show the following regarding the principal's recommendation that petitioner's contract not be renewed. In April 2003, at a Nantahala School festival, petitioner squirted the principal in the face with a water pistol and walked away. A student saw petitioner squirt the water pistol and stated: "If she can do it so can I." The student then squirted the principal in the face with a water pistol. This same student had squirted the principal with a water pistol the year before and had received a paddling. After the second incident during the April 2003 festival, the principal administered corporal punishment to the student in the presence of petitioner. The principal wrote in the Nantahala School discipline log that petitioner's actions "demeaned [him] in front of students, faculty and parents[,]" and "degrade[d] [the] school's standing with . . . parents and community."

The record also shows that, during petitioner's fourth year of teaching at Nantahala School, she had requested to chaperone the junior/senior school trip. Petitioner's request was denied and she stated her "feelings were hurt that [she] was just ignored." According to the principal, petitioner admitted to him that she had complained to other teachers about having to cover classes for teachers who were chaperoning the trip. The principal told petitioner she was "fostering a negative attitude in the faculty." The principal also told petitioner she had been given an opportunity to chaperone a school ski trip, but had failed to properly do so because she had driven her own vehicle rather than riding on the bus with the students. Petitioner stated: "This was probably wrong of me, but I have seen other chaperones do the same thing on other trips[.]" Petitioner also said she asked the sponsoring teacher if she could drive her own vehicle and was told she could. The principal told petitioner she "was unprofessional because [she could] not ever admit [she] was wrong." The principal also told the superintendent that petitioner had raised her voice on several occasions during meetings with the principal.

The superintendent additionally reviewed two "Below Standard" performance evaluations of petitioner in the areas of facilitating instruction and performing non-instructional duties. The superintendent interviewed four staff members at the school and asked each of them whether they believed "the principal [had] a personal bias against [petitioner]." None of the staff members indicated that the principal was personally biased against petitioner. The superintendent provided a memorandum to the board in which the superintendent summarized his investigation and recommended that

the board not renew petitioner's contract. The superintendent wrote the following:

> After careful consideration and review, I am not recommending tenure status for [petitioner], English teacher, Nantahala School. This decision is based upon my investigation that followed the principal's recommendation to non-renew.
>
> I have met with both [petitioner] and the principal on separate occasions to discuss each one's point of view. [Petitioner] did not know why the situation had progressed to the point that it is today. After speaking with [the principal] about [petitioner's] concerns, he expressed his interactions with [petitioner] over the past three years. On several occasions, the two of them had met in his office and the conference ended abruptly and with [petitioner's] voice being raised in the process. There was a water gun incident in which [petitioner] squirted the principal after being told not to do so. This was done in the presence of a student, who, in turn, felt he could do the same thing to [the principal].
>
> While this may seem to be an isolated case, [the principal] feels that [petitioner] may be a counter-productive force concerning the morale of the faculty at Nantahala School. It is imperative that the morale of the school be first priority. [Petitioner] openly complained [about] covering classes for other teachers and about not being a chaperone on the Junior/Senior trip. The final blow came during [petitioner's] summative evaluation meeting with [the principal]. During this meeting, [petitioner] was told that she was marked down with "below standard" in two areas. Rather than inquiring into why this occurred, she proceeded to tell [the principal] that she was going to talk with her attorney.

The superintendent presented this information to the board. The minutes of the closed session of the board's meeting state: "The Board discussed [the] Superintendent['s] . . . recommendation to deny tenure to [petitioner]. The Superintendent reviewed [petitioner's] most recent evaluation with the Board . . ., which included two ratings below standard, and [the] Superintendent . . . read the attached memorandum . . . to the Board." The board voted not to renew petitioner's contract.

Petitioner filed an amended notice of appeal from the board's decision, alleging that the decision of the board "violated N.C.G.S.

§ 115C-325(m)(2) in that the decision was arbitrary and capricious or was based on personal considerations." The trial court conducted a hearing on 26 May 2005 and entered an order on 10 June 2005 upholding the board's decision. Petitioner filed a motion for reconsideration on 20 June 2005. In her motion, petitioner stated that at the hearing, the board "claimed it had a copy of the minutes from an April 2003 faculty meeting convened prior to the Spring Festival in which the ban on water pistols was announced—and that [p]etitioner had deliberately ignored that directive." However, petitioner contended this was false in an affidavit filed with her motion for reconsideration. In an order entered 5 July 2005, the trial court denied petitioner's motion for reconsideration. Petitioner appeals.

[1] We note petitioner failed to cite in the record on appeal the record pages corresponding to each of her assignments of error. The board filed a motion with this Court to dismiss petitioner's appeal based on this violation of the North Carolina Rules of Appellate Procedure. Petitioner filed a written motion with this Court seeking leave to amend the record on appeal to correct the assignments of error. However, despite the Rules violation, we are able to determine the issues in this case. Since petitioner's Rules violation is not "so egregious as to invoke dismissal[,]" *Symons Corp. v. Insurance Co. of North America*, 94 N.C. App. 541, 543, 380 S.E.2d 550, 552 (1989), we elect to review the significant issues of this appeal pursuant to N.C.R. App. P. 2. *See Symons*, 94 N.C. App. at 543, 380 S.E.2d at 552.

I.

[2] Petitioner first argues the trial court erred by (1) determining that it was required to apply the whole record test to its review of respondent's decision and (2) failing to review respondent's decision *de novo*. Petitioner states in her brief that she "agrees that her claim that the decision was arbitrary and capricious should be reviewed under the 'whole record' test[.]" However, petitioner contends the trial court should have applied *de novo* review to her argument that the board did not renew her contract for personal reasons. In its order filed 10 June 2005, the trial court found and concluded as follows:

> The appropriate standard of review in this case is a review based upon the "whole record" of Respondent's decision. A *de novo* standard of review is not applicable to any portion of [the trial

court's] review of this appeal, according to *Spry v. City of Winston-Salem/Forsyth County Board of Education*, 105 N.C. App. 269, 412 S.E.2d 687 (1992), *aff'd* 332 N.C. 661, 422 S.E.2d 575 and N.C. Gen. Stat. § 115C-44(b).

N.C. Gen. Stat. § 115C-325(m)(2) (2005) provides that a school board, "upon recommendation of the superintendent, may refuse to renew the contract of any probationary teacher . . . for any cause it deems sufficient: Provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons." Pursuant to N.C. Gen. Stat. § 115C-325(n) (2005),

> any probationary teacher whose contract is not renewed under G.S. 115C-325(m)(2) shall have the right to appeal from the decision of the board to the superior court for the superior court district or set of districts as defined in G.S. 7A-41.1 in which the career employee is employed.

On appeal of a decision of a school board, a trial court sits as an appellate court and reviews the evidence presented to the school board. *In re Alexander v. Cumberland Cty. Bd. of Educ.*, 171 N.C. App. 649, 653-54, 615 S.E.2d 408, 413 (2005). The proper standard of review depends upon the nature of the asserted error. *Id.* at 654, 615 S.E.2d at 413. N.C. Gen. Stat. § 150B-51(b) governs judicial review of school board actions, *Farris v. Burke Cty. Bd. of Educ.*, 355 N.C. 225, 235, 559 S.E.2d 774, 781 (2002), and provides as follows:

> Except as provided in subsection (c) of this section, in reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2005). A *de novo* standard of review applies to asserted errors under subsections (1) through (4) of N.C.G.S. § 150B-51(b), while errors under subsections (5) and (6) of this statute are reviewed under the whole record test. *In re Alexander*, 171 N.C. App. at 654, 615 S.E.2d at 413.

"Under a *de novo* review, the superior court 'consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment.'" *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)). Pursuant to the whole record test, the reviewing court examines all competent evidence to determine whether a school board's decision was based upon substantial evidence. *Zimmerman v. Appalachian State Univ.*, 149 N.C. App. 121, 129, 560 S.E.2d 374, 380 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). Pursuant to N.C. Gen. Stat. § 115C-44(b) (2005), "[i]n all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct and the burden of proof shall be on the complaining party to show the contrary."

In *Spry v. Winston-Salem/Forsyth Bd. of Educ.*, 105 N.C. App. 269, 412 S.E.2d 687, *aff'd per curiam*, 332 N.C. 661, 422 S.E.2d 575 (1992), the plaintiff, a probationary teacher whose contract was not renewed by the school board, sued the school board under prior law, which allowed the right to a jury trial in such cases. *Id.* at 272-73, 412 S.E.2d at 689. The plaintiff argued, pursuant to N.C.G.S. § 115C-325(m)(2), that the school board's decision not to renew her contract was arbitrary, capricious, or based upon personal considerations. *Id.* at 274, 412 S.E.2d at 690. Our Court held that the whole record test applied to the plaintiff's appeal. *Id.* at 272, 412 S.E.2d at 689.

In the present case, despite petitioner's contention, the trial court did not determine that whole record review was the only standard of review applicable to decisions of school boards. Rather, because of

**DAVIS v. MACON CTY. BD. OF EDUC.**

[178 N.C. App. 646 (2006)]

the nature of the asserted errors in the present case, the trial court correctly determined that the whole record test was the proper standard of review. Likewise, in its order on petitioner's Rule 59 and Rule 60 motions, from which petitioner also appealed, the trial court stated as follows:

> This court did not conclude it could "only" review the case under the whole record standard, thereby disregarding and ignoring all other methods of review, as Petitioner contends; this court actually determined the specific nature of this controversy and then determined the whole record standard was the appropriate and proper standard of review for this particular case.

Moreover, whole record review was the proper standard of review to apply to petitioner's claim that the board terminated her contract for personal reasons. Our Court has held that "[i]ssues regarding the intent of the parties are issues of fact." *Harris-Teeter Supermarkets v. Hampton*, 76 N.C. App. 649, 652, 334 S.E.2d 81, 83, *disc. review denied*, 315 N.C. 183, 337 S.E.2d 857 (1985).

In *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 599 S.E.2d 888 (2004), a park ranger, Carroll, was demoted for, *inter alia*, having "willfully violated the Division Law Enforcement written guidelines on the use of emergency vehicles[.]" *Id.* at 656, 599 S.E.2d at 893. Carroll filed a petition for a contested case hearing and an administrative law judge entered a recommended decision directing that Carroll be reinstated with back pay. *Id.* at 652, 599 S.E.2d at 890. The State Personnel Commission (SPC) adopted the recommended decision and ordered that Carroll be reinstated with back pay. *Id.* However, the trial court reversed the SPC and our Court affirmed. *Id.*

In *Carroll*, our Supreme Court noted that fact-intensive issues receive whole record review. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894. The Court addressed the issue of whether "Carroll's alleged 'willful violation' of the Division's written guidelines for the use of emergency vehicles constituted 'just cause' for his demotion." *Id.* at 670, 599 S.E.2d at 901. One of the Division's guidelines permitted a law enforcement officer to "use emergency warning devices when the officer ha[d] a 'reasonable belief' that an emergency situation exist[ed]." *Id.* at 671, 599 S.E.2d at 902. The SPC found as a fact that Carroll had a reasonable belief that an emergency situation existed and the SPC concluded that Carroll's conduct did not constitute a willful violation of work rules. *Id.* Our Supreme Court held as follows:

"The trial court reviewed the SPC's findings regarding . . . Carroll's motivations for his conduct under the whole record test. Because . . . Carroll's subjective state of mind is manifestly a question of fact, this was the correct standard of review to apply." *Id.*

In the present case, petitioner argues that the board did not renew her contract because it harbored personal bias towards petitioner. In essence, petitioner argues that the intent behind the board's decision was personal. As in *Carroll*, because the board's motivation for its decision not to renew petitioner's contract was "manifestly a question of fact," the trial court properly engaged in whole record review of this issue. *See Id.* Therefore, the trial court did not err and we overrule petitioner's assignment of error.

## II.

**[3]** Petitioner next argues the trial court misapplied the whole record test with regard to petitioner's claim that the board's decision was arbitrary. Specifically, petitioner argues that, because of a factual inaccuracy in the superintendent's memorandum to the board, the trial court could not affirm the board's decision without "substituting its judgment for the Board's and deciding what the Board would have concluded if it had not received incorrect information."

"An arbitrary or capricious reason is one 'without any rational basis in the record, such that a decision made thereon amounts to an abuse of discretion.' " *Abell v. Nash County Bd. of Education*, 89 N.C. App. 262, 265, 365 S.E.2d 706, 708 (1988) (quoting *Abell v. Nash County Bd. of Education*, 71 N.C. App. 48, 52-53, 321 S.E.2d 502, 506 (1984), *disc. review denied*, 313 N.C. 506, 329 S.E.2d 389 (1985)). "A court applying the whole record test may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). "Only when there is no substantial evidence supporting administrative action should the court reverse an agency's ruling." *Mendenhall v. N.C. Dept. of Human Resources*, 119 N.C. App. 644, 650, 459 S.E.2d 820, 824 (1995).

In the present case, the trial court made the following unchallenged findings of fact:

11. The Superintendent prepared a memorandum regarding his recommendation and provided that memorandum to [the board]. While it appears the memorandum contains an inaccurate refer-

ence (i.e., that before Petitioner squirted the principal with the squirt gun, she had been told not to), and may not include all information available, the preparation and presentation of the memorandum by itself does not render the Superintendent's recommendation or the ultimate decision arbitrary or capricious. This Court has duly considered the composition of the memorandum, and its use, and the arguments presented by counsel concerning the memorandum, in conducting the review of the [board's] decision.

12. The Superintendent's memorandum, which is part of the administrative record of the [board's] decision, indicates reasons for the decision that are not arbitrary, capricious, based upon personal considerations or are otherwise improper reasons, as designated in § 115C-325(m)(2).

The trial court properly applied the whole record test to the evidence presented to the board. The trial court looked at all of the evidence and determined there was substantial evidence to support the board's determination, even without the inaccurate information. The trial court did not "substitute its judgment" for that of the board. *See Watkins*, 358 N.C. at 199, 593 S.E.2d at 769. Accordingly, the trial court did not misapply the whole record standard of review and we overrule this assignment of error.

## III.

[4] Petitioner also argues the trial court misapplied the whole record test by finding that the board conducted a sufficient inquiry into the substantive reasons for its decision not to renew petitioner's contract. In *Abell*, our Court recognized that "[a] school board may refuse to renew a probationary teacher's contract upon recommendation of the superintendent. That recommendation is only advisory, however; ultimate responsibility rests with the board." *Abell*, 71 N.C. App. at 52, 321 S.E.2d at 506. Our Court interpreted N.C.G.S. § 115C-325(m)(2) "to impose a duty on boards of education to determine the substantive bases for recommendations of non-renewal and to assure that non-renewal is not for a prohibited reason." *Id*. at 52, 321 S.E.2d at 506. Our Court held that "the advisory nature of the superintendent's recommendation to not rehire a non-tenured teacher places the responsibility on the Board to ascertain the rational basis for the recommendation before acting upon it." *Id*. at 53, 321 S.E.2d at 506. However, a school board need not "make exhaustive inquiries or formal findings of fact[.]" *Id*. Rather, "the administrative record, be

it the personnel file, board minutes or recommendation memoranda, should disclose the basis for the board's action." *Id.* at 53, 321 S.E.2d at 506-07.

In *Spry*, the board of education hired the plaintiff as a probationary teacher and assigned a support team to evaluate her teaching performance. *Spry*, 105 N.C. App. at 270, 412 S.E.2d at 687-88. The support team informed the plaintiff that her teaching performance was unacceptable. *Id.* at 270, 412 S.E.2d at 688. However, the plaintiff complained to the principal that she had personality conflicts with the members of her support team. *Id.* The principal visited the plaintiff's class and then recommended, through a member of the support team, that the school board not renew the plaintiff's contract. *Id.* at 270-71, 412 S.E.2d at 688. The superintendent conducted an investigation and recommended that the school board not renew the plaintiff's contract, and the school board voted for non-renewal of the plaintiff's contract. *Id.* at 271, 412 S.E.2d at 688.

The plaintiff filed an action against the board under the prior law, which allowed the right to a jury trial in such cases. *Id.* at 272-73, 412 S.E.2d at 689. The jury found that the school board failed to renew the plaintiff's contract for arbitrary, capricious and personal reasons and awarded damages to the plaintiff. *Id.* at 271, 412 S.E.2d at 688.

The school board argued on appeal that the trial court erred by denying its motions for summary judgment, directed verdict and judgment notwithstanding the verdict. *Id.* The plaintiff argued that the school board's decision not to renew her contract was for arbitrary, capricious or personal reasons. *Id.* at 274, 412 S.E.2d at 690. Specifically, the plaintiff alleged that the members of her support team were personally biased against her. *Id.* However, in making its decision not to renew the plaintiff's contract, the school board considered the following information:

(1) a memo from the school superintendent recommending that the Board not renew [the] plaintiff's contract; (2) the superintendent's exhibits which included materials prepared by [the] plaintiff's principal and support team; and (3) [the] plaintiff's exhibits, which included letters of recommendation, her letter to Principal Benjamin Warren outlining her concerns about her support team, and several evaluation forms. At the hearing, the Board also heard [the] plaintiff, her attorney, and a local teachers' organization representative speak on [the] plaintiff's behalf before it made its decision.

*Id.* Our Court held that even if the plaintiff's allegations regarding her support team were true, the school board conducted a sufficient inquiry into the matter. *Id.* at 275, 412 S.E.2d at 690. Our Court also held that "the inquiry by the superintendent's office was sufficient to remove any taint that may have existed in the support team's evaluation." *Id.* Accordingly, our Court reversed the judgment of the trial court. *Id.* at 276, 412 S.E.2d at 691.

In the present case, the principal recommended that petitioner's contract not be renewed. The superintendent then conducted an investigation regarding the principal's recommendation. The superintendent met with the principal and with petitioner and reviewed notes provided by them. The superintendent also reviewed two "Below Standard" performance evaluations of petitioner in the areas of facilitating instruction and performing non-instructional duties. The superintendent interviewed four staff members at the school and asked each of them whether they believed "the principal [had] a personal bias against [petitioner]." None of the staff members indicated that the principal was personally biased against petitioner. The superintendent provided a memorandum to the board in which the superintendent summarized his investigation and recommended that the board not renew petitioner's contract. The superintendent presented this information to the board. The minutes of the closed session of the board's meeting state: "The Board discussed [the] Superintendent['s] . . . recommendation to deny tenure to [petitioner]. The Superintendent reviewed [petitioner's] most recent evaluation with the Board . . ., which included two ratings below standard, and [the] Superintendent . . . read the attached memorandum . . . to the Board." The board voted not to renew petitioner's contract.

Based upon the board's inquiry, and pursuant to *Abell*, the board satisfied its duties "to determine the substantive bases for recommendations of non-renewal and to assure that non-renewal [was] not for a prohibited reason." *See Abell*, 71 N.C. App. at 52, 321 S.E.2d at 506. The administrative record in the present case shows that petitioner's contract was not renewed because she threatened to be "a counter-productive force concerning the morale of the faculty at Nantahala School[]" based upon several instances of petitioner's conduct. Moreover, the inquiry conducted by the superintendent in the present case was similar to the inquiry conducted by the superintendent in *Spry*. As in *Spry*, the superintendent's investigation in the present case served to (1) provide non-arbitrary and non-personal reasons for petitioner's non-renewal and (2) "remove any taint that

may have existed in the [principal's] evaluation." *See Spry*, 105 N.C. App. at 275, 412 S.E.2d at 690. We overrule petitioner's assignment of error.

## IV.

**[5]** Petitioner argues the trial court abused its discretion by denying her motion for reconsideration. Specifically, petitioner assigned as error that "[t]he [trial] court erred in denying the Motion for Reconsideration where the Motion showed that the Board . . . had presented false information to the [trial] [c]ourt at the May 26 hearing."

We review the denial of Rule 59 and Rule 60 motions for an abuse of discretion. *Ollo v. Mills*, 136 N.C. App. 618, 624, 525 S.E.2d 213, 217 (2000). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

In the present case, petitioner argued in her motion for reconsideration that the board deliberately misrepresented to the trial court that petitioner had been told not to squirt the principal with a squirt gun before she did so. In its order denying petitioner's motion, the trial court stated that

> the [trial court] specifically addressed and considered this matter, and made reference to the situation in the Order entered after the May 26, 2005 hearing, recognizing that such information was evidently erroneous. Reference is made to Paragraph 11 of the [trial] court's June 2, 2005 Order. Having recognized and considered the inaccurate references in the [trial court's] earlier Order, no relief would be proper for the same reason, under Rules 59 or 60.

On appeal, petitioner argues "[t]he [trial] court's rationale for declining to reconsider that issue, even with a showing of false statements by the school system to the [trial] court, reflects the [trial] court's misapplication of the whole record test in this case." However, we have already held that the trial court properly applied the whole record test to this issue. For the same reasons, we conclude the trial court did not abuse its discretion.

**[6]** Petitioner also attempts to argue in her brief that the trial court abused its discretion by failing to reconsider its ruling that

the *de novo* standard of review did not apply to the trial court's review of petitioner's action. However, petitioner did not list this specific argument in her assignment of error and therefore we do not address this issue. *See* N.C.R. App. P. 10(a). This assignment of error is overruled.

Affirmed.

Judges ELMORE and STEELMAN concur.