NO. COA13-679

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

TIFFANY N. TOBE-WILLIAMS,
        Petitioner,

        v.                          New Hanover County
                                    No. 12 CVS 3128
NEW HANOVER COUNTY BOARD OF
EDUCATION; a/k/a NEW HANOVER
COUNTY SCHOOLS,
        Respondent.


Appeal by respondent from order entered 4 January 2013 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 7 November 2013.

*The Leon Law Firm, P.C., by Mary-Ann Leon; and The McGuinness Law Firm, by J. Michael McGuinness, for petitioner-appellee.*

*Tharrington Smith, L.L.P., by Deborah R. Stagner, for respondent-appellant.*

*N.C. School Boards Association, by Allison B. Schafer and Christine T. Scheef, for Amicus Curiae North Carolina School Boards Association.*

*N.C. Association of Educators, by Ann McColl and Carrie Bumgardner, for Amicus Curiae North Carolina Association of Educators.*

GEER, Judge.


Respondent New Hanover County Board of Education ("the Board") appeals from an order reversing the Board's decision not

to renew the contract of petitioner Tiffany N. Tobe-Williams. We conclude that the process employed by the Board in reaching its decision violated Ms. Tobe-Williams' procedural rights under N.C. Gen. Stat. § 115C-287.1(d) (2013) and under N.C. Gen. Stat. § 115C-325(b) (2013) when it based its decision not to renew Ms. Tobe-Williams' contract on evidence not contained in her personnel file and without giving her notice of that evidence and an opportunity to respond to it. Accordingly, we affirm the trial court's conclusion that the Board's decision was made upon unlawful procedure.

However, the grounds for nonrenewal asserted by the Board are not arbitrary, capricious, personal, or political, and the record contains evidence that would support the Board's decision even though some of the Board's specific findings of fact are unsupported. We, therefore, reverse the trial court's order of reinstatement and remand to the Board for reconsideration of its decision after giving Ms. Tobe-Williams notice of the information that the Board intends to consider in making its decision and an opportunity to respond to that evidence.

## Facts

Ms. Tobe-Williams was employed by the Board as an assistant principal in the New Hanover County School District under a four-year contract from July 2008 to 30 June 2012. During the

2008-2009 academic year, Ms. Tobe-Williams worked at Myrtle Grove Middle School. During the course of that academic year, Ms. Tobe-Williams' relationship with her immediate supervisor, principal Robin Meiers, deteriorated due, in large part, to Ms. Tobe-Williams' concerns about the financial practices of the school treasurer, which Ms. Tobe-Williams believed were not in compliance with Board policies. Although Ms. Tobe-Williams expressed her concerns to Ms. Meiers on several occasions, she did not feel that Ms. Meiers adequately addressed the problem. The Human Resources Department encouraged Ms. Tobe-Williams to work with Ms. Meiers to resolve the issues.

On 19 June 2009, Ms. Tobe-Williams attempted to file a grievance by emailing Dr. John A. Welmers, Jr., the assistant superintendent for Human Resources, and expressing her dissatisfaction with the lack of response or guidance from Human Resources regarding her allegations of unethical financial practices. In the email, Ms. Tobe-Williams stated that if the matter was not resolved by the following Tuesday, she would contact the Department of Public Instruction to request a full investigation. She indicated that "resolved MINIMALLY mean[t]," among other things, that she be transferred to another school.

Dr. Welmers responded that Ms. Tobe-Williams' allegations concerning the treasurer were being investigated and that an

internal auditor and Ms. Meiers had taken "personnel action concerning the improvement of the treasurer's performance and put in place steps to ensure that the treasurer meets all of the school system's guidelines and regulations . . . ." Dr. Welmers notified Ms. Tobe-Williams that her email did not constitute a formal grievance and explained to Ms. Tobe-Williams the guidelines of the Board's formal grievance policy, concluding that "[i]f you believe one of these conditions [for which a grievance may be filed] exists that has not already been addressed by the school system, you certainly have every right to begin the formal grievance procedure."

On 10 July 2009, Ms. Tobe-Williams filed a formal grievance against Ms. Meiers, Dr. Welmers, and Dr. Susan Hahn, the Director of Human Resources. On 19 August 2009, then-superintendent Dr. Alfred H. Lerch, Jr. granted Ms. Tobe-Williams a transfer to Wrightsville Beach Elementary School ("WBES"), and Ms. Tobe-Williams agreed to drop her grievance. Superintendent Lerch requested that Ms. Meiers not complete an evaluation for Ms. Tobe-Williams for the 2008-2009 academic year.

During the 2009-2010 academic year, Ms. Tobe-Williams had a successful year as an assistant principal at WBES, working under Principal Pansy R. Rumley. During her second year at WBES, on

21 and 25 January 2011, Ms. Tobe-Williams suffered allergic reactions while participating in a school clean up. Ms. Tobe-Williams came to believe that these allergic reactions and her subsequent health issues were related to the uncleanliness of the school and the possibility of black mold growing in the building. On 1 February 2011, Ms. Tobe-Williams' doctor wrote her a note stating she "needs time off from school until dust and black (mold?) [sic] cleaned up."

In response to an incident report relating to Ms. Tobe-Williams, the New Hanover County Schools Maintenance Operations Department completed an indoor air quality ("IAQ") observation report on 28 January 2011. The N.C. Department of Environmental and Natural Resources Division of Environmental Health also inspected the school on 16 February 2011, while the New Hanover County Health Department conducted an inspection and tested for mold, allergens, and other health issues on 22 February 2011. None of the reports from these inspections indicated that mold was present in the school.

On 23 February 2011, Ms. Tobe-Williams met with Dr. Welmers; Mr. Bill Hance, the assistant superintendent of maintenance; and Dr. Jim Markley, the new superintendent of New Hanover County Schools. At the meeting, Ms. Tobe-Williams expressed her concerns regarding the presence of mold, the lack

of cleanliness of WBES, and her dissatisfaction with the administration's response to her concerns. She believed the administration had deceived her by failing to timely provide her with information concerning the mold investigation, by failing to return her emails, and by not sharing with her pictures of the school that Mr. Hance had taken. Ms. Tobe-Williams requested that an IAQ examination be done at the school.

Mr. Hance explained to Ms. Tobe-Williams that no mold or other significant health issues had been found at the school by the Health Department. Regarding the cleanliness of WBES, Dr. Markley acknowledged that WBES's previous inspection reports showed that WBES had received the lowest overall score in the school system, but he explained that WBES nevertheless met the school system's general guidelines for cleanliness.

On 25 February 2011, Dr. Markley temporarily transferred Ms. Tobe-Williams to Alderman Elementary School ("AES"), effective 28 February 2011, to fill the position of an assistant principal who was on maternity leave. His letter to Ms. Tobe-Williams indicated the transfer was "as a precaution for your health and safety due to the fact that you have alleged that you have become sick at work and that you believe it is due to poor indoor air quality . . . at [WBES] . . . ." He told Ms. Tobe-

Williams that they were having the IAQ at WBES tested and that he would reassess her assignment once he received the results.

Ms. Tobe-Williams did not report to work at AES. Instead, she filed a grievance against Dr. Markley and sent an email to the Board's attorney maintaining that the transfer was "in violation of federal OSHA regulations which prohibit employers from transferring employees due to workplace hazard complaints." She informed Dr. Markley that she would be out the first week of her temporary transfer due to multiple doctor appointments.

Additional IAQ testing of WBES was completed by Phoenix EnviroCorp on 25 February 2011, 7 March 2011, and 11 March 2011. Mr. Hance notified Ms. Tobe-Williams when he received the testing reports from Phoenix EnviroCorp and made copies of the reports available to Ms. Tobe-Williams. The results revealed that there were elevated levels of mold in one classroom, mobile classroom seven ("MC-7"). Phoenix EnviroCorp also conducted carbon dioxide monitoring in all the classrooms on 11 March 2011. The report concluded that the readings indicated "possible ventilation issues," but noted that all the measurements were "well below" the OSHA Permissible Exposure Limit and the NIOSH Recommended Exposure limit for carbon dioxide. On Saturday, 12 March 2011, custodians throughout the

New Hanover County School District conducted a "thorough cleaning" of WBES from 7:00 a.m. until 4:00 p.m.

On 22 March 2011, Ms. Rumley sent a letter to the parents of the students assigned to MC-7 explaining why the students had been moved from MC-7 to the library. The letter explained that the school was replacing the HVAC unit and that "[o]nce everything is operational and a final air quality inspection is approved, the students will return to MC-7." Chris Peterson, the director of maintenance operations, reviewed the letter prior to its being sent to the parents and concluded that the information in the letter was accurate.

On 24 March 2011, Dr. Markley informed Ms. Tobe-Williams that the maintenance department had completed a thorough cleaning of the school, and the air quality in the building was "good" with respect to levels of carbon dioxide and mold. He noted that the most recent tests had indicated that elevated mold spore levels were only found in one location, MC-7, and were "not elevated to a significant degree." As a "precautionary measure," Dr. Markley requested that Ms. Tobe-Williams not work in that area until further testing had been completed. Dr. Markley requested that Ms. Tobe-Williams return to WBES on 28 March 2011 unless her doctor advised her not to. Additionally, he noted that "[i]f your doctor states that you

should not return to that specific building or upon your return you experience any difficulties with breathing, anaphylaxis, or other health conditions, we will take that information into consideration for accommodating your condition which may involve making other arrangements for your work site."

Ms. Tobe-Williams returned to work, and continued to pursue her grievances against WBES regarding cleanliness and IAQ. On 10 May 2011, Ms. Tobe-Williams testified and presented evidence at a hearing before the Board. After considering all the evidence presented at the hearing, the Board adopted and sent Ms. Tobe-Williams a written resolution, which concluded that Ms. Tobe-Williams' concerns did not rise to the level of a valid grievance.

After the hearing, Ms. Tobe-Williams continued to raise complaints about the conditions at WBES, including a complaint on 25 May 2011 that a window in the media center had been screwed shut and posed a fire hazard. Ms. Tobe-Williams believed that the window was purposefully screwed shut as retaliation against her. The screws were removed promptly upon Ms. Tobe-Williams' request.

The following day, 26 May 2011, Ms. Tobe-Williams, appearing "visibly angry," confronted Ms. Rumley in her office and told Ms. Rumley that "she was the angriest that she had ever

been, and it was up to [Ms. Rumley] whether the next ten days would be pleasant and amicable or not" and that Ms. Tobe-Williams "could make life miserable by going to the news media regarding the issues with Mobile Classroom 7." Specifically, Ms. Tobe-Williams was upset about the window being screwed shut and about the letter that Ms. Rumley had sent to parents regarding MC-7. Ms. Tobe-Williams called Ms. Rumley a "liar" for stating in the letter that MC-7 had received "A" ratings on health department inspections.

Regarding the window, Ms. Rumley informed Ms. Tobe-Williams that maintenance had screwed the window shut in an attempt to follow the energy policy of not opening windows when the air-conditioning was on. Ms. Rumley also produced for Ms. Tobe-Williams the inspection reports that she believed showed the "A" ratings for MC-7. Ms. Tobe-Williams explained that the "A" did not refer to the rating, but rather the "status code." Following the meeting, Ms. Rumley notified Dr. Markley that she had misinterpreted the information on the inspection reports.

Due to a reduction in funding, Ms. Tobe-Williams was transferred to Ogden Elementary School ("OES") as an assistant principal for the 2011-2012 school year. Ms. Tobe-Williams completed the year under Principal Tammy Bruestle and received "Proficient" and "Accomplished" ratings on her final evaluation.

The evaluation noted, however, that Ms. Tobe-Williams could "be intimidating to staff members especially if they are under performing [sic]."

At a Board meeting on 5 June 2012, Dr. Markley submitted to the Board a list of principals and assistant principals, including Ms. Tobe-Williams, with a recommendation that the Board renew their contracts. Prior to the Board's vote on the contracts, however, the Board requested additional time to review Ms. Tobe-Williams' personnel file and other records concerning Ms. Tobe-Williams' performance over the course of her four-year contract "because [the Board] was aware of serious concerns about" Ms. Tobe-Williams. As a result, the superintendent removed Ms. Tobe-Williams' name from consideration, and the Board did not vote on her contract at the 5 June 2012 meeting.

After the 5 June 2012 meeting, the Board reviewed Ms. Tobe-Williams' personnel file, other information maintained by the New Hanover County Schools' Human Resources Department, and a memorandum submitted by Ms. Meiers regarding Ms. Tobe-Williams' performance during the 2008-2009 school year. Ms. Tobe-Williams was not contacted by the Board during this time. At the 10 July 2012 meeting, the superintendent again recommended that Ms. Tobe-Williams' contract be renewed. Nonetheless, the Board

unanimously voted not to renew Ms. Tobe-Williams' contract and adopted a written resolution reflecting its decision.

Ms. Tobe-Williams appealed the nonrenewal decision to New Hanover County Superior Court on the grounds that the decision was arbitrary and capricious, not supported by substantial evidence, in excess of statutory authority, and affected by errors of law. The matter was heard on 17 December 2012 by the trial court. On 4 January 2013, the court entered an order reversing the Board's decision on the grounds that it was not supported by substantial evidence in the record, was arbitrary and capricious, and was based upon unlawful procedure in violation of N.C. Gen. Stat. § 115C-287.1. The Board timely appealed to this Court.

## Discussion

"On appeal of a decision of a school board, a trial court sits as an appellate court and reviews the evidence presented to the school board." *Davis v. Macon Cnty. Bd. of Educ.*, 178 N.C. App. 646, 651, 632 S.E.2d 590, 594 (2006). The Board's decision not to renew an assistant principal's employment contract is subject to judicial review in accordance with Article 4 of the North Carolina Administrative Procedure Act ("APA"). N.C. Gen. Stat. § 115C-287.1(d).

Under Article 4, N.C. Gen. Stat. § 150B-51(b) (2013), a trial court may reverse or modify the agency decision if it is:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

Errors alleged under subsections (1) through (4) are reviewed de novo. N.C. Gen. Stat. § 150B-51(c). "When conducting de novo review, the court considers the matter anew and may freely substitute its own judgment for the board's." *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 185 N.C. App. 566, 572, 649 S.E.2d 410, 415 (2007).

The whole record test applies to claims that the Board's decision was unsupported by substantial evidence or was arbitrary, capricious, or an abuse of discretion. *Davis*, 178 N.C. App. at 652, 632 S.E.2d at 594. "Pursuant to the whole record test, the reviewing court examines all competent evidence to determine whether a school board's decision was based upon

substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

"A court applying the whole record test may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). "Only when there is no substantial evidence supporting administrative action should the court reverse an agency's ruling." *Mendenhall v. N.C. Dep't of Human Res.*, 119 N.C. App. 644, 650, 459 S.E.2d 820, 824 (1995).

This Court reviews the trial court's order for error of law. *Moore*, 185 N.C. App. at 572-73, 649 S.E.2d at 415. "Our task is essentially twofold: '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" *Id.* at 573, 649 S.E.2d at 415 (quoting *Alexander v. Cumberland Cnty. Bd. of Educ.*, 171 N.C. App. 649, 655, 615 S.E.2d 408, 413 (2005)).

I

The Board first argues that the trial court erred in failing to dismiss the petition for lack of personal jurisdiction. The APA provides that "the person seeking review must file a petition within 30 days after the person is served with a written copy of the decision." N.C. Gen. Stat. § 150B-45(a) (2013). Additionally, "[w]ithin 10 days after the petition is filed with the court, the party seeking the review shall serve copies of the petition by personal service or by certified mail upon all who were parties of record to the administrative proceedings." N.C. Gen. Stat. § 150B-46 (2013).

Here, Ms. Tobe-Williams filed her petition on 9 August 2012, but the Board was not served by personal service or by certified mail until 5 September 2012, more than 10 days later. Service was, therefore, defective. In the Board's response to the petition, the Board asserted the defenses of insufficiency of process, insufficiency of service, and lack of personal jurisdiction pursuant to Rules 12(b)(4), (5), and (6) of the Rules of Civil Procedure, and moved to dismiss the petition.

However, the issue of service and personal jurisdiction over the Board was not raised by either party at the 17 December 2012 hearing, and both parties presented arguments concerning the merits of the case. The Board did not request a ruling on

its motion to dismiss, and the trial court proceeded to enter a decision on the merits.

"Jurisdiction over the person of a defendant can be acquired only in two ways: (1) By service of process upon him, whereby he is brought into court against his will; and (2) by his voluntary appearance and submission." *In re Blalock*, 233 N.C. 493, 503, 64 S.E.2d 848, 855 (1951).

> An appearance merely for the purpose of objecting to the lack of any service of process or to a defect in the process or in the service of it, is a special appearance. In such case the defendant does not submit his person to the jurisdiction of the court.
>
> On the other hand, a general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person.
>
> A general appearance waives any defects in the jurisdiction of the court for want of valid summons or of proper service thereof.

*Id.* at 503-04, 64 S.E.2d at 855-56 (internal citations omitted).

In this case, by failing to raise the issue of jurisdiction at the hearing and by arguing the merits of the case, the Board submitted to the jurisdiction of the trial court and waived its personal jurisdiction defense. Accordingly, we hold that the trial court properly asserted jurisdiction over the Board, and we review the merits of this appeal.

II

The Board next contends that the trial court erred in concluding that the Board's decision was made upon unlawful procedure. Because this question raises issues of law, we review it de novo.

The procedure for hiring school administrators, including assistant principals, is set out in N.C. Gen. Stat. § 115C-287.1. A school administrator is employed by the local board of education "upon the recommendation of the superintendent" for an initial contract term of up to four years "ending on June 30 of the final 12 months of the contract." N.C. Gen. Stat. § 115C-287.1(b). During the term of the contract, a school administrator may not be dismissed or demoted "except for the grounds and by the procedure by which a career teacher may be dismissed or demoted as set forth in G.S. 115C-325." N.C. Gen. Stat. § 115C-287.1(c). This procedure includes the "right to receive notice of an adverse recommendation by the superintendent, to be heard before a case manager and/or the board of education, to present evidence, and generally to defend against whatever the charges or allegations might be." *Moore*, 185 N.C. App. at 570, 649 S.E.2d at 413-14 (citing N.C. Gen. Stat. § 115C-325(h)-(j3) (2005)).

However, the General Assembly has provided a different procedure for the decision whether to renew a school administrator's contract.  If the superintendent intends to recommend that the school administrator's contract be renewed, the superintendent must "submit the recommendation to the local board for action," and the Board "may approve the superintendent's recommendation or decide not to offer the school administrator a new, renewed, or extended school administrator's contract."  N.C. Gen. Stat. § 115C-287.1(d).

On the other hand,

> [i]f a superintendent decides not to recommend that the local board of education offer a new, renewed, or extended school administrator's contract to the school administrator, the superintendent shall give the school administrator written notice of his or her decision and the reasons for his or her decision no later than May 1 of the final year of the contract.  The superintendent's reasons may not be arbitrary, capricious, discriminatory, personal, or political.  No action by the local board or further notice to the school administrator shall be necessary unless the school administrator files with the superintendent a written request, within 10 days of receipt of the superintendent's decision, for a hearing before the local board.  Failure to file a timely request for a hearing shall result in a waiver of the right to appeal the superintendent's decision.  If a school administrator files a timely request for a hearing, the local board shall conduct a hearing pursuant to the provisions of G.S. 115C-45(c) and make a final decision on whether to offer the

school administrator a new, renewed, or extended school administrator's contract.

If the local board decides not to offer the school administrator a new, renewed, or extended school administrator's contract, the local board shall notify the school administrator of its decision by June 1 of the final year of the contract. *A decision not to offer the school administrator a new, renewed, or extended contract may be for any cause that is not arbitrary, capricious, discriminatory, personal, or political.*

*Id.* (emphasis added).

Thus, when the superintendent recommends nonrenewal, the school administrator is entitled to notice of the grounds for the nonrenewal recommendation and, upon timely request, to a hearing before the Board. However, when the superintendent recommends renewal, the statute is silent as to the procedure by which the Board may accept or reject the recommendation and, more specifically, as to the school administrator's right to notice and a hearing.

We are not required to decide, in this case, whether a Board must conduct a full-blown hearing whenever a superintendent recommends renewal but the Board decides otherwise. It is apparent that the procedure that the Board used in this case is not one authorized by the statute and is not consistent with Chapter 115C when read as a whole.

In construing other provisions of Chapter 115C of the North Carolina General Statutes, our Supreme Court has emphasized:

> "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the remedy in view, and the intention is to be taken or presumed according to what is consonant with reason and good discretion."

*Taborn v. Hammonds*, 324 N.C. 546, 553, 380 S.E.2d 513, 517 (1989) (quoting *Faulkner v. New Bern-Craven Cnty. Bd. of Educ.*, 311 N.C. 42, 58, 316 S.E.2d 281, 290-91 (1984)).

The Supreme Court further emphasized that when construing provisions in Chapter 115C, the following well-established principle of statutory construction applies: "'[A]ll statutes relating to the same subject matter shall be construed *in pari materia* and harmonized if this end can be attained by any reasonable interpretation.'" *Id.* (quoting *Faulkner*, 311 N.C. at 58, 316 S.E.2d at 291)). Accordingly, in deriving the meaning of a particular provision of Chapter 115C, "we must examine it in the general context of North Carolina's public school laws . . . ." *Id.*, 380 S.E.2d at 517-18.

In *Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975), the Supreme Court held that "[t]he manifest purpose" of

the statute then governing employment of teachers "was to provide teachers of proven ability for the children of this State by protecting such teachers from dismissal for political, personal, arbitrary or discriminatory reasons." It follows that the manifest purpose of N.C. Gen. Stat. § 115C-287.1(d) in prohibiting the nonrenewal of administrators' employment contracts for "arbitrary, capricious, discriminatory, personal, or political" reasons is to ensure that North Carolina's schools are staffed with administrators of proven ability.

The procedural protections explicitly provided in N.C. Gen. Stat. § 115C-287.1(d) further this purpose. Specifically, the notice of an adverse recommendation by the superintendent alerts the school administrator that her future employment status is at risk and, more importantly, of the potential grounds for nonrenewal. The school administrator may then request a hearing before the school board in order to have an opportunity to contest the validity of the asserted grounds for nonrenewal and to specifically address the concerns of the superintendent and the school board.

In this case, however, the superintendent recommended the renewal of Ms. Tobe-Williams' contract and, therefore, the statute did not expressly require that she be given an opportunity to request a hearing. The Board urges that it was,

under the plain language of N.C. Gen. Stat. § 115C-287.1, free, without conducting a hearing, to "decide[] not to offer the school administrator a new, renewed, or extended school administrator's contract." However, in this case, the Board did not simply reject the superintendent's recommendation.

Instead, the Board determined that it needed more information. As its resolution regarding the nonrenewal of Ms. Tobe-Williams' contract stated, the Board, upon receipt of the superintendent's 5 June 2012 recommendation, "chose not to renew Ms. Tobe-Williams' contract at that time because it was aware of serious concerns about Ms. Tobe-Williams. The Board asked for an opportunity to review documentation of Ms. Tobe-Williams' performance and conduct." The resolution indicated that the Board members "then reviewed extensive documentation concerning Ms. Tobe-Williams which was maintained by the Human Resources Department, including rebuttals and explanations provided by Ms. Tobe-Williams." At the 12 July 2012 Board meeting, "Board Members discussed Ms. Tobe-Williams' performance and conduct with the Superintendent *and others* and discussed the documentation they had reviewed." (Emphasis added.)

Nothing in the Board's resolution indicates that it limited its review to materials in Ms. Tobe-Williams' personnel file -- materials of which Ms. Tobe-Williams would have had notice. *See*

N.C. Gen. Stat. § 115C-325(b) (2013) (providing "[t]he personnel file shall be open for the teacher's inspection at all reasonable times" and requiring five days' notice to teachers before material is placed in personnel file). Indeed, even though, after a dispute arose between principal Robin Meiers and Ms. Tobe-Williams, a prior superintendent had expressly determined that Ms. Meiers should not prepare an evaluation for academic year 2008-2009, Ms. Meiers was asked to provide the Board with a memo describing, three years after the fact, what Ms. Tobe-Williams' ratings would have been had Ms. Meiers evaluated her formally.[1] Moreover, our review of the administrative record suggests that additional documentation reviewed by the Board was likely not included in Ms. Tobe-Williams' personnel file prior to the superintendent's having recommended her renewal.

Review of the Board's resolution also reveals that the Board in fact relied on documentation, including Ms. Meiers' memo, in makings its nonrenewal decision. The Board even found that "[f]urther investigation *by the Board* has revealed that at least two teachers at Ogden Elementary School asked the Principal not to let Ms. Tobe-Williams evaluate them because Ms.

---

[1]Significantly, as the formal evaluations in Ms. Tobe-Williams' personnel file indicate, if Ms. Meiers had prepared a formal evaluation, Ms. Tobe-Williams would have seen the evaluation and had an opportunity to comment in writing.

Tobe-Williams had intimidated them and they did not believe they could be evaluated fairly by Ms. Tobe-Williams." (Emphasis added.) In short, the Board conducted, unbeknownst to Ms. Tobe-Williams, its own investigation and then, at a Board meeting, interviewed unspecified witnesses about her performance and discussed documentation related to that performance. In other words, the Board effectively conducted a hearing without notice to or participation by Ms. Tobe-Williams.

The procedure followed by the Board in this case -- in which the Board conducted its own investigation, solicited the creation of documentation, reviewed documentation not contained in the personnel file, and interviewed witnesses -- is not specifically authorized by the statute and is not consistent with Chapter 115C when read as a whole. Moreover, our research has failed to uncover any decision by our courts suggesting that such a procedure is permissible.

N.C. Gen. Stat. § 115C-325 "governs the hiring, firing, tenure and resignations of public schoolteachers; and its definition of 'teacher' includes those who directly supervise teaching," such as principals and assistant principals. *Warren v. Buncombe Cnty. Bd. of Educ.*, 80 N.C. App. 656, 658, 343 S.E.2d 225, 226 (1986). *Before setting out the procedures for*

*the hiring and firing of employees*, the statute provides the following regarding personnel files:

> The superintendent shall maintain in his office a personnel file for each teacher that contains any complaint, commendation, or suggestion for correction or improvement about the teacher's professional conduct, except that the superintendent may elect not to place in a teacher's file (i) a letter of complaint that contains invalid, irrelevant, outdated, or false information or (ii) a letter of complaint when there is no documentation of an attempt to resolve the issue. The complaint, commendation, or suggestion shall be signed by the person who makes it *and shall be placed in the teacher's file only after five days' notice to the teacher. Any denial or explanation relating to such complaint, commendation, or suggestion that the teacher desires to make shall be placed in the file. Any teacher may petition the local board of education to remove any information from his personnel file that he deems invalid, irrelevant, or outdated. The board may order the superintendent to remove said information if it finds the information is invalid, irrelevant, or outdated.*

N.C. Gen. Stat. § 115C-325(b) (emphasis added).

Thus, employees, including administrators, are expressly provided notice of the inclusion of any materials in their personnel files and receive an opportunity to address those materials. It is evident by the inclusion of this provision at the beginning of N.C. Gen. Stat. § 115C-325 -- the section of Chapter 115C governing employment contracts -- that the General Assembly intended to protect employees from the inclusion of

unfair, untrue, incomplete, or outdated information in their personnel files that might adversely affect their employment status. This provision is also inconsistent with a construction of N.C. Gen. Stat. § 115C-287.1(d) that would allow a school board unfettered discretion regarding what it may consider when making an employment decision without a hearing.

While we recognize that school boards have wide discretion to consider evidence introduced at a hearing, *Baxter v. Poe*, 42 N.C. App. 404, 409, 257 S.E.2d 71, 74-75 (1979) ("While a Board of Education conducting a hearing . . . must provide all essential elements of due process, it is permitted to operate under a more relaxed set of rules than is a court of law[]"), there was no hearing in this case. Therefore, the Board's decision was based, at least in part, upon information -- including documentation and interviews -- to which Ms. Tobe-Williams had never been given any opportunity to respond. We cannot conclude that the General Assembly intended such a result given the careful protections that the legislature has granted regarding the contents of an employee's personnel file.

Further, "[i]t is fully established that the language of a statute will be interpreted so as to avoid an absurd consequence. . . . Where a literal reading of a statute will lead to absurd results, or contravene the manifest purpose of

the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Taylor*, 286 N.C. at 496, 212 S.E.2d at 386 (internal quotation marks omitted).

In N.C. Gen. Stat. § 115C-287.1(d), the General Assembly has specifically provided for a hearing before the Board only if the superintendent has recommended nonrenewal, as the Board argues. Nevertheless, to allow the Board, when the superintendent has in fact *recommended renewal*, to conduct its own investigation, to consider documentation outside of the administrator's personnel file, and to question witnesses without notice to the administrator, would lead to an absurd consequence that is inconsistent with "[t]he manifest purpose" of the statute to provide administrators "of proven ability for the children of this State by protecting such [administrators] from dismissal for political, personal, arbitrary or discriminatory reasons." *Taylor*, 286 N.C. at 496, 212 S.E.2d at 386.

The construction urged by the Board in this case would provide extensive procedural protections to an administrator whose performance was poor enough to merit a nonrenewal recommendation from the superintendent, but deny an administrator actually recommended for renewal by the

superintendent of any opportunity to ensure simply that information considered by the Board was not "invalid, irrelevant, [or] outdated," N.C. Gen. Stat. § 115C-325(b), or "arbitrary, capricious, discriminatory, personal, or political," N.C. Gen. Stat. § 115C-287.1(d).

Furthermore, the Board's construction would grant more procedural protection when the concerns originated with the superintendent, whose recommendation is only advisory, than when the concerns originated with those who have the ultimate decision making authority -- the Board itself. *See Abell v. Nash Cnty. Bd. of Educ.*, 71 N.C. App. 48, 52, 321 S.E.2d 502, 506 (1984) (holding that superintendent's recommendation for renewal of probationary teacher is only advisory and "ultimate responsibility rests with the board").

We recognize that in the context of a renewal of a probationary teacher's contract, this Court rejected the teacher's argument that she had a statutory right to a hearing where "N.C. Gen. Stat. § 115C-325(m)(2) [(2005)] -- the provision specifically setting forth the rights of probationary teachers -- fails to expressly provide any right to a hearing before the Board." *Moore*, 185 N.C. App. at 573, 649 S.E.2d at 415.

This Court explained that, in contrast to the provision providing the rights of probationary teachers, the General Assembly expressly requires prior notice to school administrators and career teachers from the superintendent "regarding a recommendation that may adversely affect the employee's future status." *Id.* at 574, 649 S.E.2d at 415. In reference to the provisions of N.C. Gen. Stat. § 287.1(d), the Court reasoned "[t]he existence of language granting administrators the right to a hearing 'pursuant to the provisions of G.S. 115C-45(c)' confirms that when the General Assembly intended to afford notice and hearing rights, it did so in unambiguous terms." 185 N.C. App. at 577-78, 649 S.E.2d at 418.

In *Moore*, however, the contract renewal procedures in N.C. Gen. Stat. § 115C-325(m)(2) (2005) did not provide notice and hearing rights to probationary teachers under any circumstances, thus showing an intent on the part of the General Assembly to treat probationary teachers differently from school administrators and career teachers and provide them with less procedural protection. Here, in contrast to *Moore*, the question is not whether the General Assembly intended to afford school administrators, as a class of employee, with notice and hearing rights in the contract renewal process, but rather under what

circumstances are such procedural protections triggered. To hold that when a superintendent recommends renewal, a Board may conduct its own investigation, and an administrator has no right to notice or an opportunity to be heard in any form regarding that investigation, would be an absurd result inconsistent with other provisions in Chapter 115C. We decline to adopt such a construction of N.C. Gen. Stat. § 115C-287.1(d).

Reading N.C. Gen. Stat. § 115C-287.1(d) *in pari materia* with other provisions in Chapter 115C and considering the overall purpose of N.C. Gen. Stat. § 115C-287.1(d), as directed by *Taylor* and *Taborn*, we hold that in deciding whether "to offer the school administrator a new, renewed, or extended school administrator's contract," N.C. Gen. Stat. § 115C-287.1(d), if the superintendent recommends that an administrator's contract be renewed, the Board is limited to reviewing the administrator's personnel file as it exists at that time and the superintendent's recommendation. In the event the Board has concerns regarding renewal that cannot be resolved by review of the administrator's personnel file, we hold that the Board may not consider documentation outside the administrator's personnel file or question witnesses -- effectively holding a hearing -- without providing (1) notice of the Board's concerns and of the

information that the Board is considering and (2) an opportunity to the administrator to respond to that information.

Here, the superintendent recommended that Ms. Tobe-Williams' contract be renewed at the 5 June 2012 board meeting. The Board asked the superintendent to remove Ms. Tobe-Williams from the list of assistant principals he recommended for renewal because "it was aware of serious concerns" about Ms. Tobe-Williams and needed more time to "review documentation of Ms. Tobe-Williams' performance and conduct." The Board's removal of Ms. Tobe-Williams from the recommendation list had the same effect as a recommendation for nonrenewal: it placed Ms. Tobe-Williams' future employment status at risk based upon certain concerns about Ms. Tobe-Williams. Therefore, to carry out the intent of the General Assembly, the Board should have notified Ms. Tobe-Williams of her removal from the recommendation list and given her an opportunity to respond to any information that the Board was considering that was not included in her personnel file.[2]

Accordingly, we hold that the procedure employed by the Board in this case violated Ms. Tobe-Williams' procedural rights

---

[2]We note that Ms. Tobe-Williams learned only on 12 July 2012 that material had been added to her personnel file -- two days after the Board had already decided not to renew her contract. She received a copy of her personnel file on 18 July 2012, more than a week after the decision.

under N.C. Gen. Stat. § 115C-287.1(d) and N.C. Gen. Stat. § 115C-325(b). Those violations resulted in a record that does not include any information that Ms. Tobe-Williams might have submitted had she been given the opportunity to do so, and, to that extent, is insufficient for a determination whether the Board's non-renewal decision was "arbitrary, capricious, discriminatory, personal, or political." N.C. Gen. Stat. § 115C-287.1(d).

The trial court, however, concluded that the Board's decision was not supported by substantial evidence in the record and was arbitrary and capricious. Accordingly, it reversed the Board's decision and ordered Ms. Tobe-Williams' reinstatement. After carefully reviewing the record, we hold that, although some of the Board's specific factual findings are not supported by evidence in the record, there is substantial evidence to support the Board's ultimate findings. Those findings articulate grounds for nonrenewal that are not arbitrary, capricious, discriminatory, personal, or political. Since the record reveals that there may be a non-prohibited basis for nonrenewal, we reverse the trial court's order of reinstatement.

Nevertheless, because Ms. Tobe-Williams has not yet had an opportunity to respond to the evidence gathered and considered by the Board, we reverse the Board's decision and remand for the

Board to reach a new decision after properly allowing Ms. Tobe-Williams an opportunity to be heard regarding the information that the Board intends to consider that was not included in her personnel file at the time the superintendent recommended renewal of her contract. *See Taborn v. Hammonds*, 83 N.C. App. 461, 469, 350 S.E.2d 880, 885 (1986) (vacating Board's decision and remanding for new hearing where deficiencies in Board's findings and failure to resolve material conflicts in the evidence "prevent[ed] [the Court] from discerning a substantive reason for the decision to terminate plaintiff"). Because of our resolution of this appeal, we need not address the remainder of the Board's arguments.

Affirmed in part; reversed in part; and remanded.

Judges STEPHENS and ERVIN concur.